[No. B004504. Second Dist., Div. Seven. Oct. 19, 1984.]

DAVID L. SHANE, Petitioner, v.
THE SUPERIOR COURT OF LOS ANGELES COUNTY, Respondent;
KENNETH M. KAPLAN, Real Party in Interest.

**COUNSEL**

Jones & Wilson, William F. Flahavan, William John Rea, Jr., and David C. Degerman for Petitioner.

No appearance for Respondent.

Crowe, Collisson & Kaplan and Peter D. Collisson for Real Party in Interest.

**OPINION**

**JOHNSON, J.**—Code of Civil Procedure section 877.6[1] provides a procedure whereby a party to an action in which it is alleged that two or more parties are joint tortfeasors may obtain a summary determination of the good faith vel non of a settlement by one or more such alleged tortfeasors. ▪
The question dispositive of the instant proceeding is whether in making such a determination the court may issue a declaration that its determination bars a claim asserted in another independent action which is not before the court for adjudication. We hold such an order exceeds the court's jurisdiction and authority, as conferred by section 877.6 and otherwise. In so deciding, we

---

[1]All statutory references herein are to the Code of Civil Procedure.

address and seek to elucidate existing procedural confusion regarding the proper method for effectuating the statute's mandate that a determination of a good faith settlement "bars" certain claims for indemnity and contribution against the settling tortfeasor.

## I. Facts and Proceedings Below

Petitioner David Shane (Shane) is a party to two complicated civil actions pending in different branches of the Los Angeles County Superior Court. The first action, filed December 30, 1982, and entitled Paul V. Spencer et al. v. Kenneth Kaplan et al., is pending in the court's central district and will be referred to herein as "the Los Angeles action." The second case, filed August 11, 1983, and entitled Lillian Barrett v. David L. Shane et al., is proceeding in the superior court's northwest district (the Van Nuys action). Real party in interest Kenneth Kaplan (Kaplan) is a defendant in the Los Angeles action, in which he has asserted a cross-complaint against Shane and others for various relief including indemnity. In the Van Nuys action Shane is the primary defendant and has asserted against Kaplan and another a cross-complaint which Kaplan claims seeks equitable indemnity from him but which Shane characterizes as being for damages for intentional or negligent misrepresentation by Kaplan. As disclosed by the pleadings before us, the genesis and substance of these actions is as follows.

In 1981 Shane was attorney for Lillian Barrett (Barrett) and also was trustee of a trust he had created to hold and manage the proceeds of a multimillion-dollar land sale Barrett had recently made (the Trust). Barrett was the sole beneficiary of the Trust. Kaplan and one Larry Harvey (Harvey) owned the stock of Louisiana Fried Chicken, Inc., a closed corporation engaged in the fast food business (the corporation). Shane's son and a partner arranged to buy the corporation's stock. The terms of sale included two $250,000 promissory notes, payable to Kaplan and Harvey respectively. Each note was secured by a $250,000 letter of credit issued by the Trust's depository bank and secured by Trust funds. The letters of credit were subject to demand upon default on the notes.

Shane was instrumental in arranging and structuring the transaction. In the course thereof, Kaplan and Harvey allegedly made fraudulent representations to Shane and the buyers concerning the corporation's financial condition. Less than a year after the stock purchase closed in 1982, the corporation went into bankruptcy and the buyers ceased paying on the notes. Kaplan gave notice of intention to draw upon the letters of credit. In response the buyers, together with Shane in his capacity as trustee of the Trust, commenced the Los Angeles action against Kaplan and Harvey, seeking to rescind the stock sale and the letters of credit on grounds of inten-

tional or negligent misrepresentation and to enjoin payment of Trust funds under the letters of credit. As an alternative to rescission the complaint sought damages suffered by the buyers and the Trust by reason of the alleged misrepresentations; in addition, "consequential damages" were prayed for to accompany the rescission.

The Los Angeles action was filed at the very end of 1982. Before the hearing on the request for preliminary injunction—which was unsuccessful except to provide 15 days to cure the arrears on the notes—Barrett discharged Shane as her attorney and trustee. Barrett and her Trust then paid the arrears on the notes and made further payments thereon, through the first half of 1983. On August 11, 1983, she commenced the Van Nuys action, against Shane and his law partners. The complaint in that action, which consists of 78 pages and 193 paragraphs, charges Shane and his partners with a variety of derelictions, including breaches of attorneys' and trustee's duties in connection with the corporate transaction and other alleged transactions involving Trust assets.

On August 29, 1983, Barrett and her new trustee entered into a written "Settlement Agreement" with Kaplan (the settlement). Barrett and her Trust agreed to pay Kaplan $75,000, which was less than the amount still owing on his note, and to dismiss the Los Angeles action against him (as well as a cross-complaint against him in a pending federal court action involving the corporation). For his part Kaplan released Barrett and the Trust from any further claim under the letters of credit.

Thereafter Kaplan filed a cross-complaint in the Los Angeles action against Shane and the corporation's buyers. Among other things this cross-complaint sought to have Shane indemnify Kaplan for his settlement and defense of the Los Angeles action. Shane and his law firm also filed a cross-complaint, in the Van Nuys action, asserting distinct causes of action against Kaplan and Barrett's accountant. Insofar as directed against Kaplan the cross-complaint alleged Kaplan had misrepresented to Shane and his firm certain aspects of the corporation's financial condition (essentially the same misrepresentations as alleged in the Los Angeles action) and that in reliance thereon Shane and his firm had counseled Barrett to involve her assets in the purchase and operation of the corporation. The cross-complaint sought to recover from Kaplan, as damages suffered on account of these intentional or negligent misrepresentations, Shane's and his firm's legal fees and costs incurred in defending the Van Nuys action, as well as any sums therein awarded to Barrett. Punitive damages also were prayed.

In January 1984, Kaplan filed in the Los Angeles action a "Notice of Motion and Motion for Order Determining Good Faith Settlement." The

moving papers included a copy of the settlement and copies of the complaint and cross-complaint in the Van Nuys action, of which the court was requested to take judicial notice. The notice of motion sought "an order pursuant to California Code of Civil Procedure § 877.6 determining the fact that the settlement . . . was made in good faith *and, therefore, acts as a conclusive bar to certain actions for indemnification or contribution, including but not limited to all claims made by cross-defendant David L. Shane in his cross-complaint in [the Van Nuys action]* . . . ." (Italics added.) The moving papers were served upon the parties to the Los Angeles action, including Shane, as well as his attorneys of record in the Van Nuys action. Shane filed opposition to the motion asserting the settlement could not and should not be held to bar his cross-complaint against Kaplan in the Van Nuys action because Kaplan and Shane were not "joint tortfeasors" and Shane's claims against Kaplan were not "for equitable comparative contribution, or partial or comparative indemnity. . . ." (§ 877.6, subd. (c).)

The hearing of the motion was not reported or transcribed, but Kaplan informs us the court specifically assayed the legal sufficiency of Shane's cross-complaint in the Van Nuys action and opined that the claim for attorney's fees and costs incurred in that action "was not legally valid" and that the remainder of the cross-complaint "was simply one for contribution." The court granted Kaplan's motion and entered a minute order which reads: "Motion of defendant and cross-complainant, Kenneth M. Kaplan, for order determining Good Faith Settlement. Grant." Based upon this ruling, Kaplan prepared and served a lengthy notice of ruling reciting the court's purported determination not only of good faith character of the settlement but also of the nature and sufficiency of Shane's claims in the Van Nuys action and that those claims were "specifically barred." The text of this notice, which went beyond the terms of Kaplan's notice of motion, is set forth in the margin.[2]

---

[2]"To ALL PARTIES AND THEIR COUNSEL OF RECORD: PLEASE TAKE NOTICE that at 9:00 a.m. on February 2, 1984 in Department 84 of the above entitled court the motion of Defendant and Cross-complainant Kenneth M. Kaplan for an order of determination of a good faith settlement came on regularly for hearing before the Honorable Leon Savich [*sic*], Judge Presiding. Appearances were made on behalf of Defendant and Cross-complainant Kenneth M. Kaplan by Peter D. Collisson, Esq. of Crowe, Collisson & Kaplan, and on behalf of David M. [*sic*] Shane by David C. Degerman, Esq., of Jones & Wilson. After having read and considered all papers filed in support of and in opposition to said motion and having heard and considered oral argument in support of and in opposition to said motion, the court granted the motion and made an order that pursuant to California Code of Civil Procedure § 877.6 the settlement agreement dated August 29, 1983, made between Defendant and Cross-complainant Kenneth M. Kaplan, The Barrett Ranch Trust, and Lillian Barrett was made in good faith, and, therefore, constitutes a conclusive bar to any further claim by any other alleged or actual joint tortfeasor against Kenneth M. Kaplan for equitable comparative contribution, or partial or comparative indemnity, based on comparative negligence or comparative fault to the extent that such claim arose out of or was related to the facts or claims set forth in the aforesaid settlement agreement, and that all claims, including

Shane then commenced this proceeding for an extraordinary writ, challenging the propriety of respondent court's determination the settlement was made in good faith and its further determination Shane's cross-complaint in the Van Nuys action was "barred." We issued an alternative writ of mandate limited to the portion of the order "determin[ing] that the settlement . . . constitutes a conclusive bar to the cross-complaint filed by [Shane] against [Kaplan] in [the Van Nuys action]."

## II. DISCUSSION

Kaplan's reply papers in support of his motion below commenced with this positive and accurate statement: "The only issue in any hearing on a C.C.P. § 877.6 motion is whether or not the tortfeasor entered into a good faith settlement." But incongruously, the order Kaplan obtained from the trial court did not just decide this question but proceeded to declare that claims pending in another action, which was not before the court for adjudication, were "specifically barred." Our decision that this advisory, declaratory order concerning the viability of another lawsuit exceeded the court's jurisdiction begins with a review of the history and functions of section 877.6.

In *American Motorcycle Assn.* v. *Superior Court* (1978) 20 Cal.3d 578 [146 Cal.Rptr. 182, 578 P.2d 899] (*AMA*), the Supreme Court decided "that the California common law equitable indemnity doctrine should be modified to permit a concurrent tortfeasor to obtain partial indemnity from other concurrent tortfeasors on a comparative fault basis." (*Id.*, at p. 591.) The court further held "that under the governing statutory provisions a defendant is generally authorized to file a cross-complaint against a concurrent tortfeasor for partial indemnity on a comparative fault basis, even when such concurrent tortfeasor has not been named a defendant in the original complaint." (*Id.*, at p. 607 (fn. omitted).) Finally, the court reconciled these substantive and procedural holdings with the "strong public policy in favor of settlement" (*id.*, at p. 603) reflected and effectuated by section 877,[3] by declaring "that a tortfeasor who has entered into a 'good faith'

---

but not limited to a claims for attorney's fees incurred by David Shane, set forth against Kenneth M. Kaplan in the "Cross-Complaint for Fraud, Negligent Misrepresentation, Contribution and Declaratory Relief" filed by David M. [*sic*] Shane in case no. NWC 95970 in the Northwest Branch of the Superior Court of the State of California for the County of Los Angeles, constitute claims by an alleged or actual joint tortfeasor for equitable comparative contribution or partial indemnity based on comparative negligence or comparative fault arising out of the investment by The Barrett Ranch Trust in Louisiana Fried Chicken, Inc. and are specifically barred."

[3]Section 877 provides: "Where a release, dismissal with or without prejudice, or a covenant not to sue or not to enforce judgment is given in good faith before verdict or judgment to one or more of a number of tortfeasors claimed to be liable for the same tort— [¶] (a) It shall not discharge any other such tortfeasor from liability unless its terms so provide, but

settlement [citation] with the plaintiff must also be discharged from any claim for partial or comparative indemnity that may be pressed by a concurrent tortfeasor." (20 Cal.3d at p. 604; see also *id.*, at p. 607, fn. 9 (excluding from the general allowance of partial indemnity cross-complaints one "against a concurrent tortfeasor who has entered a good faith settlement with the plaintiff . . .").)

Two years later *Fisher* v. *Superior Court* (1980) 103 Cal.App.3d 434 [163 Cal.Rptr. 47] observed that notwithstanding *AMA*'s disqualification of a good faith settling tortfeasor from liability for comparative equitable indemnity, cross-complaints against such settling defendants were frequently being pressed. (*Id.*, at p. 440.) To short-circuit this burden upon settlors and to further effectuate the policy favoring settlement advanced by *AMA*, the *Fisher* court held that judicial determination of the "good faith" vel non of a settlement—the issue determinative of the settlor's discharge from contribution under section 877 and from comparative indemnity under *AMA*—should be made "at the earliest possible time," and if at all possible "in advance of the trial of the plaintiff's complaint or of any determination of comparative or partial (equitable) indemnity as between cross-complainant and cross-defendant tortfeasors." (103 Cal.App.3d at pp. 442-443.) In addition, *Fisher* held the party asserting a settlement has not been entered into in good faith bears the burden of proof on that issue. (*Id.*, at pp. 447-449.)

Responding to procedural and substantive concerns expressed and partially resolved in *Fisher,* the 1980 Legislature enacted section 877.6. (*Northrop Corp.* v. *Stinson Sales Corp.* (1984) 151 Cal.App.3d 653, 657, fn. 4 [199 Cal.Rptr. 16]; accord 4 Witkin, Summary of Cal. Law (1984 supp.) Torts, § 40A, p. 29.) The statute[4] provides a specific, speedy hearing

---

it shall reduce the claims against the others in the amount stipulated by the release, the dismissal or the covenant, or in the amount of the consideration paid for it whichever is the greater; and [¶] (b) It shall discharge the tortfeasor to whom it is given from all liability for any contribution to any other tortfeasors."

[4]Section 877.6 provides as follows: "(a) Any party to an action wherein it is alleged that two or more parties are joint tortfeasors shall be entitled to a hearing on the issue of the good faith of a settlement entered into by the plaintiff or other claimant and one or more alleged tortfeasors, upon giving notice thereof in the manner provided in Sections 1010 and 1011 at least 20 days before the hearing. Upon a showing of good cause, the court may shorten the time for giving the required notice to permit the determination of the issue to be made before the commencement of the trial of the action, or before the verdict or judgment if settlement is made after the trial has commenced. [¶] (b) The issue of the good faith of a settlement may be determined by the court on the basis of affidavits served with the notice of hearing, and any counteraffidavits filed in response thereto, or the court may, in its discretion, receive other evidence at the hearing. [¶] (c) A determination by the court that the settlement was made in good faith shall bar any other joint tortfeasor from any further claims against the settling tortfeasor for equitable comparative contribution, or partial or comparative indemnity, based on comparative negligence or comparative fault. [¶] (d) The party asserting the lack of good faith shall have the burden of proof on that issue."

mechanism for determination of "the issue of the good faith of a settlement entered into by the plaintiff or other claimant and one or more alleged tortfeasors" (subd. (a)), the determination to be made upon proof by affidavit, or other evidence in the discretion of the court (subd. (b)). It also codifies the *Fisher* court's holding that "[t]he party asserting the lack of good faith shall have the burden of proof on that issue" (subd. (d)). Finally, and of critical concern here, subdivision (c) of section 877.6 states: "A determination by the court that the settlement was made in good faith shall bar any other joint tortfeasor from any further claims against the settling tortfeasor for equitable comparative contribution, or partial or comparative indemnity, based upon comparative negligence or comparative fault."

In contrast to the remaining subdivisions of section 877.6, which enunciate rules of procedure, subdivision (c) prescribes a substantive right of discharge from liability. The subdivision has been well characterized as "a codification of the principle set forth in [*AMA*] . . . 'that a tortfeasor who has entered into a "good faith" settlement [citation] with the plaintiff must also be discharged from any claim for partial or comparative indemnity that may be pressed by a concurrent tortfeasor.'" (*Turcon Construction, Inc.* v. *Norton-Villiers, Ltd.* (1983) 139 Cal.App.3d 280, 283 [188 Cal.Rptr. 580]; accord *Kohn* v. *Superior Court* (1983) 142 Cal.App.3d 323, 326-327 [191 Cal.Rptr. 78].)

Notably, section 877.6 does *not* provide or specify a procedure whereby the rule of discharge or "bar" announced in *AMA* and codified by subdivision (c) may be implemented as between the tortfeasor whose settlement has been determined to be in good faith and cotortfeasors who assert indemnity claims against him. However, other provisions of the Code of Civil Procedure provide mechanisms by which the good faith settlor may obtain dismissal of actions or cross-complaints which come within the judicial and statutory bar. One popular and entirely appropriate method is to make a motion for summary judgment under section 437c, either contemporaneous with or following the hearing determining the good faith of the settlement. (See, e.g., *Northrop Corp.* v. *Stinson Sales Corp., supra,* 151 Cal.App.3d at pp. 657-658 and cases cited therein; *Wysong & Miles Co.* v. *Western Industrial Movers* (1983) 143 Cal.App.3d 278, 284 [191 Cal.Rptr. 671].) Another approach is a motion for judgment on the pleadings or, if the indemnity claim is not yet at issue, a general demurrer, in either case invoking judicial notice of the good faith settlement determination that effects a "bar" to the claim, much as judicial notice may be taken of a prior judgment that operates as a bar to a pending action under the doctrines of res judicata and collateral estoppel. (See, e.g., *Weiner* v. *Mitchell, Silberberg & Knupp* (1980) 114 Cal.App.3d 39 [170 Cal.Rptr. 533] [affirming general demurrer sustained on grounds of collateral estoppel established by judicial notice of

prior proceedings].) Finally, some courts have granted simple motions to dismiss cross-complaints for indemnity immediately upon determining the cross-defendant's settlement was in good faith. (See, e.g., *Turcon Construction, Inc.* v. *Norton-Villiers, Ltd., supra,* 139 Cal.App.3d at p. 282.) While we have found no authority expressly prescribing such a disposition, it shares with its traditional counterparts discussed above the features of a final adjudication made by *the court before which the indemnity claim or action is pending for determination.*

Regardless of which mechanism is chosen, employment of a distinct procedure to adjudicate the effect of a judicially determined good faith settlement upon a pending action or claim not only is procedurally necessary but also serves an important salutary function: it focuses the court's attention distinctly upon two completely different substantive questions—whether the settlement was in good faith and whether the claim sought to be dismissed is of such a nature as to be barred by a good faith settlement. Each of these questions is becoming increasingly controversial and complex with the development of the law in this area. (Cf. *Torres* v. *Union Pacific R.R. Co.* (1984) 157 Cal.App.3d 499 [203 Cal.Rptr. 825] and *City of Los Angeles* v. *Superior Court* █(Cal.App.) [meaning and method of measuring good faith of a settlement] with *Huizar* v. *Abex Corp.* (1984) 156 Cal.App.3d 534 [203 Cal.Rptr. 47] [types of indemnity claims barred under *AMA* and section 877.6, subd. (c)].) █ Where, as here, there is a substantial dispute whether the claim sought to be barred is actually one for indemnity at all, the need for particularized adjudication becomes even greater.

In stark contrast, the order rendered in the present case, insofar as it declared "barred" Shane's cross-complaint in the Van Nuys action, was not made under any known or recognizable procedure, was not made by a court assigned to hear the action the order purported to affect, and was not even made in that action but rather in another case. For each of these reasons, the order exceeded the court's jurisdiction and authority, as we now explain.

A. *The Order Exceeded the Authority Conferred by Section 877.6.*

As we noted above, section 877.6 provides a procedure to determine whether a settlement has been made in good faith, but does *not* purport to confer authority to render declarations that actions or claims are "barred" by such a settlement. A recent amendment to section 877.6 reiterates the limited procedural scope of the statute. Statutes 1984, chapter 311, section 1 adds a new subdivision (e), providing for review by writ of mandate of "a determination of the good faith or lack of good faith of a settlement

. . . ." The writ will lie "to review th[at] determination," and the provisions of section 583 will be tolled "during the period of review of a *determination* pursuant to this subdivision." (*Ibid.* (italics added).)[5] This reenactment and amendment of section 877.6 thus underscores that its existing subdivisions confer authority only to render a determination of good faith.

Notwithstanding this limitation—acknowledged by Kaplan's statement below that "[t]he only issue in any hearing on a C.C.P. § 877 motion is whether or not the tortfeasor entered into a good faith settlement"—Kaplan by his motion sought and obtained not only a determination of good faith settlement but also a declaration concerning the nature of Shane's claims asserted in his Van Nuys cross-complaint and a corresponding order that such claims were "specifically barred." The jurisdictional impropriety of the trial court's rendering such novel and extended relief on a motion under section 877.6 is demonstrated by the analogous case of *Parker* v. *Shell Oil Co.* (1942) 55 Cal.App.2d 48 [130 P.2d 158].

*Parker* was an action on an alleged open, mutual and current account. Defendants obtained an order under former section 1000, for inspection of the documents comprising the account pleaded. The statute provided for such discovery, and further provided the sanction of exclusion from evidence of documents not produced. Plaintiff produced a set of documents and defendant, relying on the statute, moved for an order precluding their introduction into evidence on the basis the documents did not constitute an open, mutual and current account. The court granted the motion and made an order that the entries of the alleged account were to be excluded from evidence in the trial of the action. When the case came to trial before another judge he abided by this order and precluded plaintiffs from introducing any evidence.

The Court of Appeal reversed. While admitting section 1000 was remedial and subject to liberal construction, Justice Peters explained that "a liberal

---

[5]The full text of new subdivision (e) of section 877.6 is as follows: "When a determination of the good faith or lack of good faith of a settlement is made, any party aggrieved by the determination may petition the proper court to review the determination by writ of mandate. The petition for writ of mandate shall be filed within 20 days after service of written notice of the determination, or within such additional time not exceeding 20 days as the trial court may allow. [¶] (1) The court shall, within 30 days of the receipt of all materials to be filed by the parties, determine whether or not the court will hear the writ and notify the parties of its determination. [¶] (2) If the court grants a hearing on the writ, the hearing shall be given special precedence over all other civil matters on the calendar of the court except those matters to which equal or greater precedence on the calendar is granted by law. [¶] The running of any period of time after which an action would be subject to dismissal pursuant to Section 583 shall be tolled during the period of review of a determination pursuant to this subdivision."

construction cannot supply a remedy or impose a penalty not expressly or impliedly contained in the statute. . . . There is nothing in the statute to indicate that the Legislature ever intended that the court, in such a proceeding, should pass on the relevancy or the sufficiency of the documents to prove the allegations of the party relying on them. . . . The appellants produced the documents upon which they rely to show their alleged open, mutual and current account. The motion judge, on motion of respondent, then made an order purporting to exclude those documents from evidence. Presumably, that order was made because the motion judge believed that such documents, as a matter of law, did not constitute an account of the type alleged. Regardless of the correctness of that conclusion, *the motion judge was without power, in such a proceeding, to pass on the legal sufficiency of the produced documents.* *Where a statute authorizes a prescribed procedure, and the court acts contrary to the authority conferred, it has exceeded its jurisdiction, and the order so made is void.* [Citations]." (*Parker* v. *Shell Oil Co., supra,* 55 Cal.App.2d at pp. 52-53.) (Italics added.)

 The present case presents parallel circumstances requiring an identical conclusion. The trial court has made an order "barring" Shane's cross-complaint. This order was in no wise authorized by the statute under which it was purportedly rendered. The substance and intended effect of the order is to preclude Shane from prosecuting his cross-complaint. If the order stands, the trial court in the Van Nuys action presumably will abide by it.[6] But the order cannot stand, for it exceeded the trial court's jurisdiction and hence is void.

## B. *The Van Nuys Action Was Not Before the Court for Adjudication.*

A second jurisdictional defect in the trial court's order arises from the fact that the Van Nuys action, a portion of which that order purports to affect in the most severe manner imaginable, was not before the trial court for adjudication. The Van Nuys action had not been assigned for hearing,

---

[6]Kaplan contends the motion judge's "barring" order made in the Los Angeles action would be "res judicata" in the Van Nuys action. Technically, it would not. Even assuming arguendo its procedural propriety and consequent vitality, the order was not a final judgment but was more in the nature of an intermediate ruling concerning the sufficiency of pleadings. (See 4 Witkin, Cal. Procedure (2d ed. 1971) Judgment, § 162.) The cases upon which Kaplan relies, involving orders upon motions made after judgment in marital proceedings, are not in point. (See *Wodicka* v. *Wodicka* (1976) 17 Cal.3d 181, 188 [130 Cal.Rptr. 515, 550 P.2d 1051].)

On the other hand, a determination of good faith settlement does create a "bar" analogous in effect to res judicata. And the peculiarity of such a determination, coupled with the peremptory nature of the trial court's "barring" order as recited in Kaplan's notice of ruling, would likely lead a court in the Van Nuys action to consider the viability of Shane's cross-complaint in that action foreclosed.

either plenary or partial, before the motion judge in the Los Angeles action, and the motion and order that purportedly "barred" a part of the former action were made only in the latter. ■ It would seem axiomatic that a court or department lacks jurisdiction to adjudicate and dispose of the merits of an action that has not been assigned to it for hearing. But by issuing its barring order, and in the course of that process assaying and determining the validity of the Shane's cross-complaint in the Van Nuys action, the trial court effectively did just that.

Most likely because the trial court's action at bench is unprecedented, we have found no case precisely comparable. However, related authorities concerning the correlative jurisdiction of the numerous departments of the Los Angeles County Superior Court provide are instructive and dispositive. The leading case is *Williams* v. *Superior Court* (1939) 14 Cal.2d 656 [96 P.2d 334], which first instructs that the jurisdiction of a multijudge, multidepartment superior court is vested in the court as a whole and if one department exercises authority in a matter which might properly be heard in another such action, although "irregula[r]," it does not amount to a defect of jurisdiction. (*Id.*, at pp. 662-663.) However, *Williams* further holds: "[W]here a proceeding has been duly assigned for hearing and determination to one department of the superior court by the presiding judge of said court in conformity with the rules thereof, and the proceeding so assigned has not been finally disposed of therein or legally removed therefrom, *it is beyond the jurisdictional authority of another department of the same court to interfere with the exercise of the power of the department to which the proceeding has been so assigned.* [Citation.] In other words, while one department is exercising the jurisdiction vested by the Constitution in the superior court of that county, the other departments thereof *are as distinct therefrom as other superior courts.* [Citation.] If such were not the law, conflicting adjudications of the same subject-matter by different departments of the one court would bring about an anomalous situation and doubtless lead to much confusion." (*Id.*, at p. 662.) (Italics added.)

The instant proceeding does not present the exact procedural posture of *Williams,* because the Van Nuys action had not been "assigned for hearing and determination" to a department and the trial judge's action here constituted interference with an action pending in another district of the court. Nonetheless, the jurisdictional principles and underlying policies expressed in *Williams* do control. The Van Nuys action had been filed in a branch of the Los Angeles Superior Court in accordance with the rules of that court. (L. A. County Super. Ct. Rules, rule 300, §§ 3, 4.) These rules also authorize only the presiding judges of the court and its central civil master calendar department to transfer such a case to the central district. (*Id.*, rule

300, §§ 5, 6; rule 304, § 3.) But no such transfer had been made in contemplation of the hearing in the Los Angeles action. The trial (motion) judge in that action therefore had not been vested with the superior court's jurisdiction over the Van Nuys action. Had he purported to dispose of that action directly, his jurisdiction would have been subject to serious question at the very least. (Cf. *People* v. *Batchelor* (1976) 56 Cal.App.3d 278, 283-285 [128 Cal.Rptr. 349].) ■■■ A fortiori, the trial court's purported determination of a portion of the Van Nuys action, through an unauthorized procedure and under the rubric of the Los Angeles action, constituted an excess of jurisdiction. Moreover, the ruling assessing the merits of Shane's cross-complaint and purporting to "bar" it planted a deep seed of conflict and confusion if and when the Van Nuys cross-complaint was called for hearing before a properly assigned department. (See fn. 6, *ante*.)

C. *The Van Nuys Action Was the Proper Forum for Adjudication of the Settlement's Effect on That Action.*

As observed above, Kaplan had (and still has) abundant remedies in the Van Nuys action by which to assert the effect—if any—of his good faith settlement with Barrett upon Shane's Van Nuys cross-complaint. Demurrers, motions for judgment on the pleadings, and motions for summary judgment are all available in the Van Nuys action. By skipping these regularly prescribed procedures and resorting instead to a statutorily unrecognized motion for a "declaration of bar," Kaplan and the trial court improperly intertwined two separate lawsuits and the discrete questions of the settlement's good faith and the effect of the settlement upon the causes of action Shane had pleaded in the Van Nuys action. The latter question involves difficult substantive issues, including the proper characterization of Shane's claims, the impact thereon not only of section 877.6 but also section 877, and the viability in either event of Shane's claim for attorney's fees incurred in the Van Nuys action allegedly as the result of Kaplan's misrepresentations to Shane.

In the normal course of procedure, these questions not only may but properly should be raised and determined in the Van Nuys action, where the challenged claims are pending. Conversely, established authorities dictate that the Los Angeles action was not the proper forum to adjudicate the validity or viability of claims pending in the Van Nuys action. ■■■ It has long been held that the validity of one lawsuit is not a proper subject for declaratory relief in a second lawsuit, inasmuch as the first case will determine the questions posed by the second. (E.g., *Taliaferro* v. *Taliaferro* (1960) 179 Cal.App.2d 787, 791 [4 Cal.Rptr. 689], and cases cited therein; see also *Sunset Scavenger Corp.* v. *Oddou* (1936) 11 Cal.App.2d 92, 96 [53 P.2d 188] ("A declaratory judgment is not a proper method of determining the sufficiency of legal defenses to a pending action.").) Indeed,

*Pacific Electric Ry. Co.* v. *Dewey* (1949) 95 Cal.App.2d 69 [212 P.2d 255], specifically held that a suit for declaratory judgment that a tort plaintiff could not prosecute his action in view of a settlement and release did not lie, given that the settlement could be asserted and effectuated in the principal action. Yet the trial court's "barring" order at bench amounts in form and substance to just such a declaration.

*Halpin* v. *Superior Court* (1971) 14 Cal.App.3d 530 [92 Cal.Rptr. 329] is also instructive. There a defendant in a personal injury action pending in Shasta County filed an action in Sacramento County for enforcement of an alleged good faith settlement with the Shasta plaintiff and an injunction against further prosecution of the Shasta action. The Court of Appeal issued a writ of prohibition against the second lawsuit, in part because the alleged settlement could have been asserted as a defense in the first. (*Id.*, at p. 545.) The court also invoked the rule of priority of jurisdiction among actions involving the same subject matter. (*Ibid.*) While that rule of jurisdiction does not technically apply among actions pending in the same superior court (*Mobil Oil Corp.* v. *Superior Court* (1978) 79 Cal.App.3d 486, 492-493 [145 Cal.Rptr. 17]), the practical lesson of the *Halpin* case pertains here: the Van Nuys action offers ample, appropriate vehicles for resolution of Kaplan's defense of "bar" to the cross-complaint pending therein. In short, absent consolidation of the actions under section 1048, subdivision (a), the Los Angeles action was not and is not the proper forum for adjudication of the sufficiency of pleadings or defenses in the Van Nuys action.

## III. CONCLUSION

Section 877.6 was enacted to facilitate the determination of good faith settlements by joint tortfeasors, whereby they would be discharged, under *AMA,* from actual or potential liability for comparative indemnity. In most cases, where such indemnity claims are asserted as cross-complaints in a single action, effectuation of this discharge as declared by subdivision (c) following a determination of good faith settlement will present little procedural difficulty. In the unusual instances where separate lawsuits for liability and indemnity are filed, existing procedural vehicles furnish full means for a good faith settlor to obtain the relief contemplated by the statute and *AMA.* However, the reach of that "bar" presents questions distinct from the good faith of the settlement itself, and adjudication of these questions in a given case requires care and discrimination. When, as here, *two* or more cases are involved, the underlying issues concerning the extent of the "bar" may be highly complex. Such cases may also involve courts of different jurisdiction, and/or different stages of proceeding, and/or diverse parties asserting diverse claims. Subject of course to the convenient statutory mechanisms of transfer, severance, consolidation, and coordination, each such

case must be decided on its own, by a court seized of jurisdiction to adjudicate. Hybrid, nonstatutory procedures which spontaneously intermingle discrete cases and issues will only heighten confusion and conflict, both procedural and substantive.

We of course are conscious the parties to this proceeding have tendered for our redetermination the substantive question whether Shane's cross-complaint is barred by the trial court's determination of Kaplan's good faith settlement with Barrett and her Trust. ██ But, as we have held above, the legal sufficiency of the cross-complaint—intrinsically and in light of the good faith settlement determination—is a question that belongs, in the first instance, in the action where that cross-complaint is pending. We will not compound the trial court's excess of jurisdiction by issuing an advisory opinion on issues that were never properly in suit in the action from which this proceeding arose.

## IV. DISPOSITION

Let a peremptory writ of mandate issue requiring the Los Angeles County Superior Court to vacate its February 2, 1984, order in case No. C437276 insofar as it determines—as reflected by the February 6, 1984, notice of ruling, commencing with the words "to the extent that" on page 2, line 14 thereof—that the settlement dated August 29, 1983, between Kenneth M. Kaplan, the Barrett Ranch Trust, and Lillian Barrett constitutes a conclusive bar to the cross-complaint filed by David L. Shane against Kenneth M. Kaplan in case No. NWC 95970.

Lillie, P. J., and Thompson, J., concurred.