[No. G042772. Fourth Dist., Div. Three. June 10, 2010.]

NORDSTROM COMMISSION CASES.

**COUNSEL**

Thierman Law Firm and Mark R. Thierman for Objector and Appellant.

Deason & Archbold, Matthew F. Archbold; Barnhill & Vaynerov, Maxim Vaynerov; Willis & DePasquale and James M. Hansen for Plaintiffs and Respondents.

Littler Mendelson, Julie A. Dunne and Matthew S. Dente for Defendant and Respondent.

OPINION

FYBEL, J.—

INTRODUCTION

Ernest Young and Nicole Savala filed separate class action lawsuits against Nordstrom, Inc., alleging Nordstrom's policy of paying net sales commissions to its commissioned sales employees violated sections 221 and 203 of the Labor Code. (All further statutory references are to the Labor Code, unless otherwise noted.) In 2009, the parties reached a settlement. One member of the class, Kellie Taylor, objected to the settlement. The trial court overruled Taylor's objection, and approved the settlement. Taylor appealed, and we affirm.

■ The trial court considered all relevant factors in determining the settlement was fair, adequate, and reasonable. On appeal, Taylor argues that the court failed to fully consider the strength of the class's case, and that the settlement undervalues the waiting period penalties to which the class is allegedly entitled, pursuant to section 203. For all the reasons detailed *post*, we conclude the trial court's analysis of the settlement's terms correctly considered the merits of the class's claims, and Nordstrom's defenses. We therefore hold the trial court did not abuse its discretion in overruling Taylor's objection and approving the settlement.

Taylor also argues that the settlement is not fair, adequate, and reasonable because it allocates no portion of the damages to the class's claims under the Labor Code Private Attorneys General Act of 2004 (PAGA). (§ 2699.) We conclude the trial court did not abuse its discretion in approving a settlement which does not allocate any damages to the PAGA claims.

Taylor also argues the portion of the settlement providing for in-store merchandise vouchers is contrary to California law. We disagree. Merchandise vouchers are permissible to fund a portion of the settlement.

Finally, we reject Taylor's request that we opine on the applicability of the settlement of the present case to another class action lawsuit against Nordstrom.

STATEMENT OF FACTS AND PROCEDURAL HISTORY

In 1996, Sandy Rios filed a class action lawsuit against Nordstrom, in which she alleged Nordstrom violated sections 221, 400 to 410, and 203 by calculating employee commissions based on net sales. (*Rios v. Nordstrom, Inc.*

(C.D.Cal., Mar. 24, 1997, No. CV 96-4927 JSL) (*Rios*).) The parties reached a settlement in which Nordstrom would calculate commissions based on net sales on a pay period basis (subtracting the value of total pay period returns from the value of total pay period sales), and agreed to enter into written commission agreements with its sales associates explaining how their commissions would be calculated. The *Rios* court certified a settlement class in December 1996. In March 1997, the United States District Court for the Central District of California approved the settlement, finding it fair, adequate and reasonable, and entered judgment.

In 2004, Ernest Young and Nicole Savala filed separate class action lawsuits alleging the net sales commission plan approved in the *Rios* settlement violated sections 221 and 203. Plaintiffs alleged the sales associates' commissions became earned wages at the moment the merchandise was sold, and Nordstrom's policy of deducting commissions for returned merchandise was a taking back of wages. Young and Savala's complaints were coordinated before the Orange County Superior Court and renamed the Nordstrom Commission Cases.

In 2009, the parties reached a settlement of the Nordstrom Commission Cases. By the terms of the settlement, Nordstrom agreed to pay up to $6.405 million in cash and $2.5 million in Nordstrom merchandise vouchers and to make prospective changes to its calculation, payment, and reporting of commissions. The trial court entered an order preliminarily approving the settlement. Notice of the settlement was sent to the class.

Kellie Taylor filed an objection to the Nordstrom Commission Cases settlement. Her objection was the only one filed. (Cynthia Alvarez had also filed an objection, despite having filed a separate class action lawsuit against Nordstrom, as described *post*. Alvarez opted out of the Nordstrom Commission Cases settlement in order to pursue her separate lawsuit, mooting her objection.) The trial court concluded Taylor's objection lacked merit. The court then found the settlement of the Nordstrom Commission Cases was fair, adequate, and reasonable. The court entered an order granting final approval to the settlement and entered final judgment in October 2009. Taylor timely appealed.

During the pendency of the Nordstrom Commission Cases, on June 13, 2008, Cynthia Alvarez filed a class action lawsuit against Nordstrom in Los Angeles Superior Court, which was later removed to the United States District Court for the Central District of California. (*Alvarez v. Nordstrom, Inc.* (C.D.Cal., Dec. 1, 2009, No. CV 08-5856-AHM (AJWx)) 2009 U.S.Dist. Lexis 119169 (*Alvarez*).) On July 10, 2009, the United States District Court denied Alvarez's motion for class certification, concluding her claims were

already pending before the Orange County Superior Court. After judgment was entered in the Nordstrom Commission Cases, Nordstrom moved to remand the *Alvarez* case back to state court. The unopposed motion was granted. (*Alvarez, supra,* 2009 U.S.Dist. Lexis 119169.)

## DISCUSSION

### I. STANDARD OF REVIEW

"We review the trial court's decision to approve a class action settlement in order to determine whether the trial court acted within its discretion. We do not reweigh the evidence or substitute our notions of fairness for the trial court's. [Citations.] 'To merit reversal, both an abuse of discretion by the trial court must be "clear" and the demonstration of it on appeal "strong." ' [Citation.]" (*Cho v. Seagate Technology Holdings, Inc.* (2009) 177 Cal.App.4th 734, 743 [99 Cal.Rptr.3d 436].) "Our review of the trial court's approval of a class action settlement is limited in scope. We make no independent determination whether the settlement terms are 'fair, adequate and reasonable,' but only determine whether the trial court acted within its discretion. [Citation.]" (*Clark v. American Residential Services LLC* (2009) 175 Cal.App.4th 785, 798 [96 Cal.Rptr.3d 441], fn. omitted.)

" 'The trial court has broad discretion to determine whether the settlement is fair. [Citation.] It should consider relevant factors, such as the strength of plaintiffs' case, the risk, expense, complexity and likely duration of further litigation, the risk of maintaining class action status through trial, the amount offered in settlement, the extent of discovery completed and the stage of the proceedings, the experience and views of counsel, the presence of a governmental participant, and the reaction of the class members to the proposed settlement. [Citation.] . . . Due regard should be given to what is otherwise a private consensual agreement between the parties. The inquiry "must be limited to the extent necessary to reach a reasoned judgment that the agreement is not the product of fraud or overreaching by, or collusion between, the negotiating parties, and that the settlement, taken as a whole, is fair, reasonable and adequate to all concerned." [Citation.]' [Citations.] '[A] presumption of fairness exists where: (1) the settlement is reached through arm's-length bargaining; (2) investigation and discovery are sufficient to allow counsel and the court to act intelligently; (3) counsel is experienced in similar litigation; and (4) the percentage of objectors is small. [Citation.]' [Citations.] 'Public policy generally favors the compromise of complex class action litigation. [Citation.]' [Citations.]" (*Cellphone Termination Fee Cases* (2009) 180 Cal.App.4th 1110, 1117–1118 [104 Cal.Rptr.3d 275].)

## II. *The Trial Court's Order*

The trial court's order granting final approval to the Nordstrom Commission Cases settlement reads in relevant part as follows: "Kellie Taylor objected to the settlement on 11 June 2009. Her objections are overruled. [¶] . . . [¶]

". . . Ms. Taylor requests that this Court clarify that the settlement agreement in this case will not have any preclusive effect on the determination of the waiting time penalty issues in the *Alvarez* case because those issues were not considered either as a separate element of damages or in the mediation and settlement of this matter. This Court, however, cannot issue orders that are factually or legally binding on a federal district court, and Taylor provides no legal precedent holding otherwise.

". . . Both Defendant and Plaintiffs in this action adamantly dispute Taylor's argument that waiting time penalties were not alleged in the complaint or that they were ignored or overlooked during the investigation, discovery, mediation, and ultimate settlement of this matter.

". . . The evidence presented is very substantial that such issues as Labor Code [section] 203 penalties were pleaded, demands made, and then penalty issues considered throughout the lengthy settlement negotiations. It is clear from the evidence presented too, that issues of purported 'willfulness' under section 203 and the difficulty of proof of that issue in light of the 'good faith dispute' requirement were evaluated and considered. The Court notes the argument by Plaintiffs that 'What is most relevant to the claims considered by Objector Taylor is that given the express authorization contained in the employment application, this was yet another compelling argument as to why Nordstrom had a good faith belief it was complying with the law.' [Citation.]

". . . There is no merit to Ms. Taylor's objection to the voucher portion of the settlement agreement. There was no 'undisputed right' to the commissions at issue in this case. That issue was hotly disputed and contested at length. It is well established that employees may release claims for disputed wages, and, in doing so, can negotiate the consideration they are willing to accept in exchange for the release. [Citation.] Moreover, California courts routinely approve settlements based entirely or partly upon coupons or vouchers. [Citation.] The voucher portion of the settlement is appropriate under the circumstances of this case. [¶] . . . [¶]

". . . The settlement was clearly the product of arms-length bargaining and negotiation. The settlement was reached after substantial investigation and discovery; all class counsel are experienced and endorse the settlement with

appropriate supporting evidence and argument; the evidence presented shows that the response of the class members has been overwhelmingly positive.

". . . The settlement is fair, adequate, and reasonable. All of the required factors favor approval of this settlement."

### III. WAIVER OF ARGUMENTS

■ Both Nordstrom and the class member respondents argue Taylor has waived her arguments on appeal by either failing to raise them or abandoning them in the trial court. "A waiver is the relinquishment of a known right. 'A waiver may occur (1) by an intentional relinquishment or (2) as "the result of an act which, according to its natural import, is so inconsistent with an intent to enforce the right as to induce a reasonable belief that such right has been relinquished." [Citation.]' " (*Gaunt v. Prudential Ins. Co.* (1967) 255 Cal.App.2d 18, 23 [62 Cal.Rptr. 624]; see *Salton Community Services Dist. v. Southard* (1967) 256 Cal.App.2d 526, 532–533 [64 Cal.Rptr. 246].) Having reviewed the record, we conclude Taylor did not intentionally relinquish her right to raise these arguments on appeal, nor were the arguments of her counsel in the trial court completely inconsistent with the arguments she raises here. We will therefore consider Taylor's arguments on their merits.

■ We do note, however, that Taylor's reply brief on appeal argues Nordstrom failed in its respondent's brief to provide any defense "to claims that it failed to timely pay base wages." The failure to timely pay base wages was not an issue presented by the coordinated complaints in the Nordstrom Commission Cases, and was not raised in Taylor's opening brief on appeal. A party may not raise an issue for the first time on appeal (*McKee v. Orange Unified School Dist.* (2003) 110 Cal.App.4th 1310, 1320 [2 Cal.Rptr.3d 774]), and points raised for the first time in a reply brief on appeal will not be considered, absent good cause for failure to present them earlier (*Campos v. Anderson* (1997) 57 Cal.App.4th 784, 794, fn. 3 [67 Cal.Rptr.2d 350]). For both of these reasons, Taylor's arguments regarding base pay rather than commission wages will not be addressed in this opinion.

### IV. THE TRIAL COURT DID NOT ABUSE ITS DISCRETION BY APPROVING THE SETTLEMENT. THE SETTLEMENT DOES NOT UNDERVALUE OR FAIL TO CONSIDER THE CLASS'S CLAIMS UNDER SECTION 203.

The only factor relevant to the fairness of the settlement which Taylor challenges is the strength of the plaintiffs' case. (See generally *Cellphone Termination Fee Cases, supra*, 180 Cal.App.4th at pp. 1117–1118.) Specifically, Taylor argues the settlement does not include or grossly undervalues

waiting period penalties, pursuant to section 203.[1] The trial court's order overruling Taylor's objections specifies that the section 203 claims were "pleaded, demands made, and then penalty issues considered throughout the lengthy settlement negotiations. It is clear from the evidence presented too, that issues of purported 'willfulness' under section 203 and the difficulty of proof of that issue in light of the 'good faith dispute' requirement were evaluated and considered."

■ The trial court did not abuse its discretion in determining the willfulness element of a section 203 claim was lacking. There is no willful failure to pay wages if the employer and employee have a good faith dispute as to whether and when the wages were due. (*Amaral v. Cintas Corp. No. 2* (2008) 163 Cal.App.4th 1157, 1201–1202 [78 Cal.Rptr.3d 572].) Nordstrom identifies several reasons why it had a good faith dispute with the Nordstrom Commission Cases plaintiffs regarding whether and when commission wages were due:

■ 1. The right to commission wages is subject to the employment contract between an employer and employee, and Nordstrom calculated and paid its employees' commission wages in accord with its written commission agreements with its employees. "It is undisputed that commissions are 'wages,' and thus that plaintiff's claim for commissions falls within the terms of Labor Code sections 2926 and 206. [Citations.] However, for purposes of enforcing the provisions of the Labor Code, '[t]he right of a salesperson or any other person to a commission depends on the terms of the contract for compensation.' [Citations.] Accordingly, plaintiff's right to commissions 'must be governed by the provisions of the [employment agreement].' [Citation.] We have already concluded that, pursuant to the plain language of the written employment agreement, plaintiff was not entitled to any further commissions after he was terminated. Accordingly, defendant's failure to pay such commissions cannot constitute a violation of the Labor Code." (*Nein v. HostPro, Inc.* (2009) 174 Cal.App.4th 833, 853 [95 Cal.Rptr.3d 34], fn. omitted; see also Div. of Labor Stds. Enforcement, Enforcement Policies and Interpretations Manual (June 2002 rev.) § 34.3 (DLSE Manual) ["Commission computation is based upon the contract between the employer and the employee."]; *id.*, § 34.3.1 ["Computation of commissions frequently relies on such criteria as the date the goods are delivered or the payment is received.

[1] "If an employer willfully fails to pay, without abatement or reduction, in accordance with Sections 201, 201.3, 201.5, 202, and 205.5, any wages of an employee who is discharged or who quits, the wages of the employee shall continue as a penalty from the due date thereof at the same rate until paid or until an action therefor is commenced; but the wages shall not continue for more than 30 days." (§ 203, subd. (a).)

Sometimes, the commission of the selling salesperson is subject to reconciliation and chargebacks if the goods are returned. If these conditions are clear and unambiguous, they may be utilized in computing the payment of the commissions."].)

2. The form of the commission agreements between Nordstrom and its employees was approved by the United States District Court for the Central District of California as part of the settlement in the *Rios* case. The *Rios* settlement reads, in relevant part, as follows: "No later than 30 days after the Effective Date, Nordstrom will provide written notice to each employee in the Settlement Class currently working for Nordstrom in California that explains how Nordstrom currently calculates the commissions payable to those employees. Plaintiffs agree that by Nordstrom sending this commission calculation notice, Nordstrom shall be deemed to have satisfied and be in full compliance with California Labor Code § 224.[2] The parties agree that Nordstrom is entitled to draft a form of notice it finds suitable for this purpose. Although Nordstrom is not obligated to use the precise language set forth in Exhibit B hereto, the parties agreed that use of the language in Exhibit B shall satisfy the requirements of this paragraph.[3] In addition, not later than 30 days after the Effective Date, Nordstrom will supplement and/or

---

[2] "The provisions of Sections 221, 222 and 223 shall in no way make it unlawful for an employer to withhold or divert any portion of an employee's wages when the employer is required or empowered so to do by state or federal law or when a deduction is expressly authorized in writing by the employee to cover insurance premiums, hospital or medical dues, or other deductions not amounting to a rebate or deduction from the standard wage arrived at by collective bargaining or pursuant to wage agreement or statute, or when a deduction to cover health and welfare or pension plan contributions is expressly authorized by a collective bargaining or wage agreement. [¶] Nothing in this section or any other provision of law shall be construed as authorizing an employer to withhold or divert any portion of an employee's wages to pay any tax, fee or charge prohibited by Section 50026 of the Government Code, whether or not the employee authorizes such withholding or diversion." (§ 224.)

[3] Exhibit B to the settlement agreement reads as follows: "As a selling employee, you routinely see commission earnings on your paycheck. We know your paycheck is important to you, and want to make certain you understand how Nordstrom pays commissions. [¶] Our first step is to determine your pay period total sales and total returns: [¶] Each pay period, we collect the sales and returns rung on your employee number. In pay periods you have selling hours, we total your sales and returns. [¶] Keep in mind our return policy is an important part of the way we do business. Customers are welcome to return merchandise to us at any time. Returns are applied against your pay period sales regardless of when the customer originally purchased the merchandise. [¶] If returns come back in pay periods you do not have selling hours, those returns may be 'held' up to four pay periods and applied against your sales when you next have selling hours. [¶] Commissions are based upon net sales, which we determine in one of two ways: [¶] If you are among the majority of our salespeople, we determine your net sales by calculating the difference between your total sales and total returns (sales minus returns and held returns); *or* [¶] If you are among the very few employees for whom we have established a sales quota, your net sales are those above and beyond your quota amount (sales minus returns, held returns and the sum of your selling hours times your quota amount). [¶] Once your net sales have been determined, we calculate commissions by multiplying those net

modify its employment application in California to include language that explains how Nordstrom currently calculates commissions and that states to the effect that should the applicant be hired by Nordstrom, the applicant agrees that his or her commission would be calculated in the manner that Nordstrom then calculates commissions unless later modified at the discretion of Nordstrom. Plaintiffs agree that by supplementing and/or modifying its employment application in this manner, Nordstrom will be in compliance with California Labor Code § 224 as to employees hired using the application. The parties agree Nordstrom is entitled to draft a form of supplement/modification to its California employment application that it finds suitable for this purpose. Although Nordstrom is not obligated to use the precise language set forth in Exhibit C hereto, the parties agree that use of the language in Exhibit C shall satisfy the requirements of this paragraph.[4] Plaintiffs hereby waive and release any future claim they might have against the Released Parties that any commission calculation notice or employment application supplement/modification adopted by Nordstrom consistent with the terms of this paragraph are insufficient under California Labor Code § 224."

While the United States District Court's order cannot change California law, its approval of Nordstrom's net sales commission plan fairly gave Nordstrom good cause to believe that performing under the terms of the federal court-approved settlement was appropriate and legally sanctioned. The failure to comply with a United States District Court's order could have subjected Nordstrom to contempt proceedings.

---

sales by the appropriate commission percentage. This amount is what you see as 'Commissions' on your paycheck stub. [¶] Your Personnel office can answer any questions you may have about our current commission structure."

[4] Exhibit C to the settlement agreement reads as follows: "If I am offered and accept employment with Nordstrom, I understand I may be paid on a commission basis and that Nordstrom's current business practice is to calculate net sales and commissions in this manner: [¶] Each pay period, sales and returns rung on an employee's number are collected. In pay periods commissioned employees have selling hours, sales and returns are totaled. [¶] Returns are applied against pay period sales regardless of when the customer originally purchased the merchandise. If returns come back in pay periods during which no selling hours exist, those returns may be 'held' up to four pay periods and applied against sales when selling hours are next worked. [¶] Nordstrom determines net sales in one of two ways: [¶] For the majority of salespeople, Nordstrom determines net sales by calculating the difference between total sales and total returns (sales minus returns and held returns); or [¶] For employees who have an established . . . sales quota, net sales are those above and beyond the applicable quota amount (sales minus returns, held returns and the sum of selling hours times the quota amount). [¶] Once net sales have been determined, Nordstrom calculates commissions by multiplying those net sales by the appropriate commission percentage. [¶] By accepting employment with Nordstrom, I agree to have my commissions calculated in this manner. I also understand this agreement is in addition to the terms included in the Employment Application and does not in any way change those terms."

3. If commissions cannot be calculated as of the time employment is terminated, California law permits an employer to pay commissions after the termination date, as long as they are paid once they can be calculated. (DLSE Manual, *supra*, §§ 4.6, 5.2.5.)[5] California law also permits Nordstrom's policy of paying commissions based on net sales. (*Steinhebel v. Los Angeles Times Communications, LLC* (2005) 126 Cal.App.4th 696, 707 [24 Cal.Rptr.3d 351] [approving process under which "an employer makes advances on commissions to employees and later reconciles any overpayments by deductions from future commissions"]; *Hudgins v. Neiman Marcus Group, Inc.* (1995) 34 Cal.App.4th 1109, 1122 [41 Cal.Rptr.2d 46] [central issue decided was that employer could not deduct pro rata share of commissions from all employees for returns where salesperson could not be identified; "[a]s to those items of merchandise the customer decides to keep, the sales associate has clearly earned his or her commission at the moment the sales documents are completed and the customer takes possession of the purchased items. *As to identified returns, the sale is reversed and the individual sales associate is required to return the commission because his or her sale was rescinded."* (italics added)].)

4. The California Labor Commissioner refused to find a violation in two different cases where terminated Nordstrom employees were paid commission wages after the employees' last days of work, "after . . . commissions became calculable."

Given California law, the language of the *Rios* settlement, which was authorized by an order of the United States District Court, and the interpretation of Nordstrom's policy of payment of commissions by the California Labor Commissioner, through the Commissioner's rulings in cases challenging the policy, there was a good faith dispute regarding whether and when commission wages were due. The trial court did not abuse its discretion in determining that the class's case regarding section 203 penalties was not strong, and therefore deciding the terms of the settlement were fair, adequate, and reasonable.

Taylor argues Nordstrom could not have had a good faith belief its actions were proper because the right to full, timely payment of wages cannot be waived. Taylor relies on this court's opinion in *Pellegrino v. Robert Half*

---

[5] "There are situations where wages (i.e., some commissions) are not calculable until after termination and, thus, are not due until that time. The employer has an obligation to pay those wages as soon as the amount is ascertainable and failure to pay those wages at that time will result in imposition of waiting time penalties. [Citation.]" (DLSE Manual, *supra*, § 4.6.) "In some instances commission wages are not ascertainable at the time of a sale or transaction and must be calculated based on later developments (*i.e.*, receipt of payment, shipping, etc.) Commission wages are due and payable when they are reasonably calculable." (DLSE Manual, *supra*, § 5.2.5.)

*Internat., Inc.* (2010) 181 Cal.App.4th 713, review granted and held April 28, 2010, 108 Cal.Rptr.3d 191 [229 P.3d 100]. Because the Supreme Court granted review of the case, it cannot be relied on by this court or the parties. (Cal. Rules of Court, rule 8.1115(a).) Significantly, as explained *ante*, California law is clear that an employment agreement can provide that commissions will be paid when calculable. Therefore, Nordstrom's system of computing and paying net commissions at the next pay period, which was in compliance with the *Rios* settlement, resulted in full, timely payment of commission wages.

■ Taylor also argues that section 203 was amended after the *Rios* settlement was approved, overriding the terms of the *Rios* settlement. This amendment, however, merely added a reference to section 201.3, a newly enacted statute providing for payment of wages to employees of temporary services employers. (Stats. 2008, ch. 169, §§ 1, 2.) Taylor also notes that PAGA (discussed in detail, *post*) was not even a law in 1998 when the *Rios* settlement was approved. PAGA does not create any substantive rights or change California law regarding payment of commission wages; it allows aggrieved employees to bring civil actions to recover already existing penalties if the Labor and Workforce Development Agency, which is authorized to recover such penalties, does not do so. (Legis. Counsel's Dig., Sen. Bill No. 796 (2003–2004 Reg. Sess.); Stats. 2003, ch. 906, § 1.) Neither the amendment of section 203 nor the enactment of PAGA overrode the terms of the *Rios* settlement.

*Clark v. American Residential Services LLC, supra,* 175 Cal.App.4th 785, on which Taylor relies, is distinguishable. In that case, the appellate court vacated the award approving a class action settlement because the trial court "lacked information sufficient to make its own informed evaluation of the fairness of the settlement." (*Id.* at p. 807.) As the appellate court held, "the trial court is obliged, at a minimum, to determine whether a legitimate controversy exists on a legal point, if that legal point significantly affects the valuation of the case for settlement purposes." (*Id.* at p. 803.) The trial court fails to meet that obligation if it accepts the conclusions of counsel without having some " 'substantiated explanation' of the manner in which a core legal issue was evaluated." (*Ibid.*) In the present case, the court did consider a substantiated explanation of the strengths and weaknesses of the class's claims, as well as the potential total recovery by the class under various damage theories.

## V. THE TRIAL COURT DID NOT ABUSE ITS DISCRETION IN APPROVING A SETTLEMENT THAT DOES NOT ALLOCATE A PORTION OF THE RECOVERY TO THE PAGA CLAIMS.

PAGA permits an aggrieved employee in a civil action to recover any penalty authorized by any provision of the Labor Code. (§ 2699.) Taylor argues the Nordstrom Commission Cases settlement "effectively nullifies PAGA by failing to include PAGA penalties and purporting to settle all of the claims of the class members."

The Nordstrom Commission Cases settlement agreement identifies liability for PAGA penalties as a claim against Nordstrom and includes the following language: "The Parties allocate $0 to any Private Attorneys General Act penalty claim under Labor Code § 2699 *et seq.*, for penalty claims based on the Released Claims. During the Class Period, Nordstrom paid Putative Class Members' commissions pursuant to a commission plan that it contends was approved by the United States District Court in *Rios*, and consequently, Nordstrom contends no claim for penalties of any nature is valid." Thus, the PAGA penalty claims were at issue, and were resolved as a part of the overall settlement of the case. We find no abuse of discretion in the trial court's approval of the settlement agreement containing these terms.

The cases Taylor cites are inapposite, at best. In *Franco v. Athens Disposal Co., Inc.* (2009) 171 Cal.App.4th 1277, 1300 [90 Cal.Rptr.3d 539], the appellate court held: "The Legislature has made clear that an action under the PAGA is in the nature of an enforcement action, with the aggrieved employee acting as a private attorney general to collect penalties from employers who violate labor laws. Such an action is fundamentally a law enforcement action designed to protect the public and penalize the employer for past illegal conduct." The case did not address whether a settlement agreement could allocate zero dollars to PAGA penalties, however. The case stands only for the proposition that an individual arbitration agreement is invalid to the extent it purports to prevent an employee plaintiff from acting in a private attorney general capacity. (*Franco v. Athens Disposal Co., Inc., supra*, 171 Cal.App.4th at p. 1282.)

Taylor also cites *Waisbein v. UBS Fin. Servs. Inc.* (N.D.Cal., Aug. 15, 2007, No. C-07-02328 MMC) 2007 U.S.Dist. Lexis 62723. That United States District Court order, however, was vacated by a later order which directly contradicts Taylor's arguments on appeal. (*Waisbein v. UBS Fin. Servs. Inc.* (N.D.Cal., Dec. 5, 2007, No. C-07-2328 MMC) 2007 U.S.Dist. Lexis 92051, pp. *8–*9 ["the question is whether the *Bowman* class members voluntarily entered into an agreement in which they accepted a monetary benefit from UBS in exchange for not pursuing their claims under PAGA. The indisputable answer to that question is 'yes' "].)

VI.  THE TRIAL COURT DID NOT ABUSE ITS DISCRETION BY
APPROVING A SETTLEMENT FUNDED IN PART, WITH IN-STORE
MERCHANDISE VOUCHERS.

Taylor argues the trial court abused its discretion in approving the settlement because the use of in-store coupons for part of the settlement is unconscionable. Taylor argues section 212 prohibits an employer from paying wages due to an employee in scrip, coupons, or other things that are redeemable other than for money.

■  Section 212 does not apply because, as detailed *ante*, there is a good faith dispute as to whether and when commission wages were owed to the class members. " '[W]ages are not "due" if there is a good faith dispute as to whether they are owed.' " (*Chindarah v. Pick Up Stix, Inc.* (2009) 171 Cal.App.4th 796, 802 [90 Cal.Rptr.3d 175].) Employees may release claims for disputed wages and may negotiate the consideration they are willing to accept in exchange. (*Id.* at pp. 802–803.)

When the settlement is viewed in its entirety, the merchandise voucher portion constitutes 20 percent of the total provided to the class. The merchandise vouchers were intended to allow class members who had a claim of less than $20 to receive a voucher which would not be subject to state or federal withholding, permitting those class members to receive the full value of their claims.

Finally, Taylor's argument that settlements involving coupons or merchandise vouchers are disfavored by California courts is not supported by the relevant authorities. (*Chavez v. Netflix, Inc.* (2008) 162 Cal.App.4th 43, 52–55 [75 Cal.Rptr.3d 413] [affirming approval of settlement which provided one month of free DVD rental service or one month of free upgrades to DVD rental service]; *In re Microsoft I-V Cases* (2006) 135 Cal.App.4th 706, 710, 711–713 [37 Cal.Rptr.3d 660] [affirming approval of settlement where 100 percent of settlement was paid in vouchers]; *Wershba v. Apple Computer, Inc.* (2001) 91 Cal.App.4th 224, 247 [110 Cal.Rptr.2d 145] [coupons were fair portion of settlement also involving cash refunds, reimbursements, and reinstatement of free service]; *Dunk v. Ford Motor Co.* (1996) 48 Cal.App.4th 1794, 1802, 1804 [56 Cal.Rptr.2d 483] [$400 coupon which could be applied against purchase price of new car, with no cash payable to the class members, was fair as settlement of claims that vehicles were defective].)

## VII. NEITHER THE TRIAL COURT NOR THIS APPELLATE COURT MAY MAKE RULINGS REGARDING THE APPLICABILITY OF THE SETTLEMENT OF THIS CASE TO ANOTHER CLASS ACTION LAWSUIT FILED AGAINST NORDSTROM.

Taylor also asks that the claims raised in the *Alvarez* case not be included in the settlement of this case. We may not render an advisory opinion (*Branick v. Downey Savings & Loan Assn.* (2006) 39 Cal.4th 235, 243 [46 Cal.Rptr.3d 66, 138 P.3d 214]) or adjudicate the merits of a case not pending before us (*In re Marriage of Goddard* (2004) 33 Cal.4th 49, 57, fn. 4 [14 Cal.Rptr.3d 50, 90 P.3d 1209]). Despite Taylor's requests to the contrary, the trial court could not decide that the Nordstrom Commission Cases settlement would not cover claims pending before the United States District Court in *Alvarez*. (*Shane v. Superior Court* (1984) 160 Cal.App.3d 1237, 1239–1240 [207 Cal.Rptr. 210] [court ruling on motion for determination of good faith settlement under Code Civ. Proc., § 877.6 exceeds its jurisdiction by declaring that its ruling bars a claim asserted in another independent action].)

In December 2009, the *Alvarez* case was remanded back to state court, pursuant to Nordstrom's unopposed motion to remand. (*Alvarez, supra,* 2009 U.S.Dist. Lexis 119169 at p. *1.) In the motion, Nordstrom had argued remand was appropriate because there were no remaining potential class claims, and there was no longer federal jurisdiction. (*Id.* at p. *4.) Rather than opposing the motion, Alvarez filed a document agreeing to the remand, and stating she did " 'not concur' " in Nordstrom's arguments. (*Id.* at p. *5.) In granting the motion to remand, the United States District Court for the Central District of California noted: "The Court declines to issue a formal ruling on whether Plaintiff would be entitled to pursue a class action but does agree with Nordstrom that Plaintiff appears to be maneuvering craftily in order to avoid an adverse ruling on that issue. In order to assist the Superior Court in evaluating any effort by Plaintiff to have her claims certified as a class action once they are back in state court, the Court is attaching the Reply Brief of Nordstrom to this Order." (*Id.* at p. *1.) Whether the *Alvarez* case is pending in federal or state court does not seem to make a real difference. At the time the trial court in the present case approved the settlement agreement, the *Alvarez* case was pending before the United States District Court for the Central District of California, and the trial court in Orange County correctly refused to opine on whether the Nordstrom Commission Cases settlement would affect the claims asserted in that case. Neither the Orange County Superior Court nor this appellate court may opine at this point whether the Nordstrom Commission Cases settlement has any effect on the *Alvarez* case now that it is back in state court.

## Disposition

The judgment is affirmed. Respondents shall recover costs incurred on appeal.

Aronson, Acting P. J., and Ikola, J., concurred.