Filed 2/6/15

<u>CERTIFIED FOR PARTIAL PUBLICATION</u>*

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIFTH APPELLATE DISTRICT

| | |
|---|---|
| GREGORIO LOPEZ et al., | Consolidated Case Nos. F067609 & F068074 |
| Plaintiffs and Appellants, | |
| v. | (Super. Ct. No. 09CECG03603) |
| ASBURY FRESNO IMPORTS, LLC, | |
| Defendant and Respondent. | **OPINION** |

-ooOoo-

APPEAL from a judgment of the Superior Court of Fresno County.  Mark Wood Snauffer, Judge.

Pritchard and Kay and M. Gregg McKerroll for Plaintiffs and Appellants.

Dowling Aaron Incorporated, Lynne Thaxter Brown and James D. Burnside for Defendant and Respondent.

-ooOoo-

---

*       Pursuant to California Rules of Court, rules 8.1105(b) and 8.1110, this opinion is certified for publication with the exception of parts I., II., III., and V. of the Discussion.

Plaintiffs appeal from the judgment entered against them after a court trial in an action alleging various violations of consumer protection statutes. We conclude the trial court correctly determined the alleged violations did not constitute violations of the consumer protection statutes invoked, or plaintiffs failed to comply with the statutory prerequisites to recovery. Therefore, we affirm.

### FACTUAL AND PROCEDURAL BACKGROUND

Plaintiffs and appellants, Gregorio and Dominga Lopez, were born in Mexico and have lived in the United States since 1988. They do not speak or read English well. When he was about 11 years old, their son David began to help Gregorio with his farm labor contracting business, translating for him and setting up deals.[1] Plaintiffs told David they would buy him a car because of his help with the business, so, when David was 16, they all went to Mercedes Benz of Fresno, a Mercedes Benz dealership then owned by defendant and respondent, Asbury Fresno Imports, LLC, to look at a car David liked. They spoke with a Spanish-speaking salesman. The cars the dealership had on the lot did not have the navigation system David wanted; the salesman told the Lopezes the car David wanted would have to be ordered from out of state and it would take a couple of weeks. On March 31, 2007, plaintiffs learned the car had arrived at the dealership, but the Spanish-speaking salesman was not available. They called David to meet them at the dealership to interpret.

Plaintiffs spoke with a salesman, Vic, who did not speak Spanish; David translated for his parents. Plaintiffs filled out a credit application. Vic took the credit application to the sales manager, who obtained credit reports for both plaintiffs. David explained the credit reports to his parents. The sales manager then prepared a document referred to as a "read-back" or "four-square," which set out the price and monthly payments for the

---

[1] For the sake of clarity, we refer to members of the Lopez family by their first names. No disrespect is intended.

vehicle based on an interest rate the sales manager estimated plaintiffs would qualify for, considering their credit scores and other information. Because of plaintiffs' weak credit scores and other factors, the sales manager used an interest rate of approximately 20 percent. The salesman took the read-back to plaintiffs and plaintiffs agreed to a price of $56,000 for the vehicle, with estimated monthly payments of $1,322.80 for 72 months. Both plaintiffs signed the read-back.

The sales manager prepared the paperwork for the sale and the salesman then took the Lopezes to the finance department. David and Gregorio testified the finance manager said he had a better deal for them; he could get them a lower monthly payment because the bank would give them a better interest rate if they purchased additional items. They purchased additional items, including a gap policy designed to pay off any remaining loan balance if the car was totaled and the automobile insurance was not sufficient to entirely pay off the loan. The finance manager did not recall the specific transaction with plaintiffs, but testified he routinely presented buyers with a menu of options to purchase, explained each optional product, and explained what the base payment would be without any optional products and what it would be after addition of any optional products the buyer chose to include. The menu prepared for plaintiffs included the monthly payment at 10.69 percent interest with and without packages of options. After plaintiffs chose their options, the finance manager printed out the paperwork and had plaintiffs sign it; David did not translate the documents.

Approximately two months after the purchase of the car, David reviewed the purchase documents and realized the purchase price, including all optional items, totaled approximately $72,000. He told his parents, who thought the amount was high, but said it was a really nice car. They took no steps at that time to rescind or otherwise object to the contract.

In 2009, the car was damaged beyond repair in an accident. Plaintiffs' automobile insurance paid the lender approximately $37,000. That left an unpaid loan balance of

approximately $9,000.  When plaintiffs made a claim on the gap policy, they were told the policy had been canceled.  David contacted the dealership, which had no record of any cancellation.  Plaintiffs' attorney sent a letter to defendant demanding defendant take certain actions to remedy alleged violations of the Consumers Legal Remedies Act (CLRA; Civ. Code, § 1750 et seq.)[2] within 30 days.  Defendant attempted to obtain further information to resolve the matter, but plaintiffs filed suit 10 days after the letter was sent.  Defendant subsequently paid the balance then remaining on the loan.

Plaintiffs' fourth amended complaint contains seven causes of action:  intentional misrepresentation, negligent misrepresentation, concealment, violation of the CLRA, violation of the Automobile Sales Finance Act (ASFA; § 2981 et seq.), violation of section 1632, and violation of the unfair competition law (Bus. & Prof. Code, § 17200 et seq.).  After a court trial, judgment was entered in favor of defendant.  Defendant then moved for and was awarded its attorney fees incurred in defending the action, pursuant to provisions of the ASFA.  Plaintiffs' appeals from the judgment and from the posttrial order awarding attorney fees have been consolidated.

## DISCUSSION

### I.[*]

#### STANDARD OF REVIEW

"In general, in reviewing a judgment based upon a statement of decision following a bench trial, 'any conflict in the evidence or reasonable inferences to be drawn from the facts will be resolved in support of the determination of the trial court decision. [Citations.]'  [Citation.]  In a substantial evidence challenge to a judgment, the appellate court will 'consider all of the evidence in the light most favorable to the prevailing party, giving it the benefit of every reasonable inference, and resolving conflicts in support of

---

[2]      All further statutory references are to the Civil Code, unless otherwise indicated.

[*]      See footnote, *ante*, page 1.

the [findings]. [Citations.]' [Citation.] We may not reweigh the evidence and are bound by the trial court's credibility determinations. [Citations.] Moreover, findings of fact are liberally construed to support the judgment. [Citation.]" (*Estate of Young* (2008) 160 Cal.App.4th 62, 75-76.)

"[W]here the trier of fact has expressly or implicitly concluded that the party with the burden of proof did not carry the burden and that party appeals, it is misleading to characterize the failure-of-proof issue as whether substantial evidence supports the judgment." (*Sonic Manufacturing Technologies, Inc. v. AAE Systems, Inc*. (2011) 196 Cal.App.4th 456, 465 (*Sonic*).) "'[W]here the issue on appeal turns on a failure of proof at trial, the question for a reviewing court becomes whether the evidence compels a finding in favor of the appellant as a matter of law. [Citations.] Specifically, the question becomes whether the appellant's evidence was (1) "uncontradicted and unimpeached" and (2) "of such a character and weight as to leave no room for a judicial determination that it was insufficient to support a finding."' [Citation.]" (*Id*. at p. 466.)

"'Questions of statutory interpretation, and the applicability of a statutory standard to undisputed facts, present questions of law, which we review de novo. [Citation.]' [Citation.]" (*Cuiellette v. City of Los Angeles* (2011) 194 Cal.App.4th 757, 765.)

## II.[*]

## ASFA

Plaintiffs assert defendant violated the ASFA because the read-back failed to disclose the interest rate used to calculate the monthly payment. Their argument seems to be that the read-back constituted a purchase order as that term is defined in section 2981, subdivision (l), but it failed to disclose the interest rate as required by that subdivision.

Subdivision (l) of section 2981 provides: "'Purchase order' means a sales order, car reservation, statement of transaction or any other such instrument used in the

---

[*] See footnote, *ante*, page 1.

conditional sale of a motor vehicle pending execution of a conditional sale contract. The purchase order shall conform to the disclosure requirements of subdivision (a) of Section 2982 and Section 2984.1, and subdivision (m) of Section 2982 shall apply."

Subdivision (a) of section 2982, in effect in 2007 when the transaction occurred, required specified disclosures:

"(a) The contract shall contain the following disclosures, as applicable, which shall be labeled 'itemization of the amount financed:'

"(1)

"(A) The cash price ….

"(B) The fee to be retained by the seller for document preparation.

"(C) The fee charged by the seller for certifying that the motor vehicle complies with applicable pollution control requirements.

"(D) A charge for a theft deterrent device.

"(E) A charge for a surface protection product.

"(F) Taxes imposed on the sale.

"(G) The amount of any optional business partnership automation fee to register or transfer the vehicle ….

"(H) The amount charged for a service contract.

"(I) The prior credit or lease balance remaining on property being traded in ….

"(J) Any charge for an optional debt cancellation agreement.

"(K) Any charge for a used vehicle contract cancellation option agreement.

"(L) The total cash price, which is the sum of subparagraphs (A) to (K), inclusive. [¶] … [¶]

"(2) Amounts paid to public officials for the following:

6.

"(A)  Vehicle license fees.

"(B)  Registration, transfer, and titling fees.

"(C)  California tire fees ….

"(3)  The aggregate amount of premiums agreed, upon execution of the contract, to be paid for policies of insurance included in the contract ….

"(4)  The amount of the state fee for issuance of a certificate of compliance, noncompliance, exemption, or waiver pursuant to any applicable pollution control statute.

"(5)  A subtotal representing the sum of the foregoing items.

"(6)  The amount of the buyer's downpayment itemized ….
[¶] … [¶]

"(7)  The amount of any administrative finance charge, labeled 'prepaid finance charge.'

"(8)  The difference between item (5) and the sum of items (6) and (7), labeled 'amount financed.'"

Nothing in the 2007 version of subdivision (a) of section 2982 required a purchase order to include an interest rate.  Section 2984.1 required disclosures concerning insurance on the purchased vehicle.  Subdivision (m) of section 2982 pertained to the manner, method, or terminology in which the disclosures were to be made.  Thus, the premise of plaintiffs' argument – that a purchase order is required to include disclosure of the interest rate used to calculate the monthly payments – is not supported by the authorities plaintiffs cite.  Accordingly, regardless whether the read-back constituted a purchase order, the trial court correctly determined plaintiffs failed to meet their burden of establishing defendant violated the ASFA by not disclosing the interest rate in the read-back.

In their reply brief, plaintiffs argue defendant violated the ASFA by failing to provide them with a copy of the read-back they signed.  They base their argument on section 2981.9, which provides, in pertinent part:  "The conditional sale contract or a

7.

purchase order shall be signed by the buyer or his or her authorized representative and by the seller or its authorized representative. An exact copy of the contract or purchase order shall be furnished to the buyer by the seller at the time the buyer and the seller have signed it. No motor vehicle shall be delivered pursuant to a contract subject to this chapter until the seller delivers to the buyer a fully executed copy of the conditional sale contract or purchase order and any vehicle purchase proposal and any credit statement which the seller has required or requested the buyer to sign and which he or she has signed during the contract negotiations."

"[P]oints raised for the first time in a reply brief on appeal will not be considered, absent good cause for failure to present them earlier." (*Nordstrom Com. Cases* (2010) 186 Cal.App.4th 576, 583.) Raising points for the first time in a reply brief deprives the respondent of the opportunity to respond. Plaintiffs have offered no reason for their failure to raise the issue in their opening brief. Consequently, we decline to consider this argument.

# III.[*]

# CLRA

## A.     Violations of statute

The CLRA sets out 26 "unfair methods of competition and unfair or deceptive acts or practices" that are unlawful when used in a transaction intended to result in the sale of goods to a consumer. (§ 1770, subd. (a)(1)-(26).) Plaintiffs contend defendant used four of these acts or practices in plaintiffs' vehicle purchase transaction.[3] In their opening brief, plaintiffs set out the four subdivisions defendant allegedly violated and listed a

---

[*]     See footnote, *ante*, page 1.

[3]     At the time of plaintiffs' purchase transaction, section 1770, subdivision (a) contained only 23 proscribed acts or practices, but the four plaintiffs rely on here were among them. (See Stats. 1996, ch. 684, § 1.)

number of acts they contend violated those subdivisions. They did not, however, identify which acts or practices allegedly violated which subdivisions of the statute, or demonstrate how violations were established at trial. In their reply, plaintiffs more particularly identify the acts that allegedly violated each subdivision of the statute.

Section 1770, subdivision (a)(9) proscribes "[a]dvertising goods or services with intent not to sell them as advertised." Plaintiffs assert they engaged in what they believed to be final negotiations for the purchase of the vehicle with the salesman, Vic. They were asked to sign the read-back, which led them to understand it represented the agreement they had reached for the purchase of the car at a price they were prepared to pay.

Because the trial court found plaintiffs failed to satisfy their burden of proving violations of the CLRA, in order to demonstrate reversible error, plaintiffs must establish that the evidence presented at trial compels a finding in their favor as a matter of law. (*Sonic*, *supra*, 196 Cal.App.4th at p. 466.) Assuming plaintiffs are contending the read-back itself constituted an advertisement for the sale of the car at the price and on the terms contained in it, they have not pointed to any uncontroverted evidence that defendant did not intend to sell the car at that price or on those terms, or that it did not do so. The trial court found the finance manager subsequently offered plaintiffs optional items, such as the gap protection and an extended warranty, explained the items to plaintiffs, and showed them the change in the monthly payment if the items were added. The finance manager also offered plaintiffs a lower interest rate than that reflected in the read-back. Plaintiffs chose to purchase some additional items, increasing the total amount to be paid for the car and increasing the monthly payments over what they would have been with the same interest rate and no additional items. The trial court rejected plaintiffs' testimony that the finance manager offered them a lower interest rate only if they purchased additional items, since the menu of options he showed them disclosed what the monthly payment and interest rate would be with no additional items.

The evidence was conflicting. The trial court found facts favoring defendant's version of events. Substantial evidence supported the facts found by the trial court. Plaintiffs have not demonstrated the evidence compelled a finding in their favor.

Section 1770, subdivision (a)(13) proscribes "[m]aking false or misleading statements of fact concerning reasons for, existence of, or amounts of price reductions." Plaintiffs assert the finance manager offered them a better deal, but did not disclose the interest rate used in the read-back was 20.3 percent, they actually qualified for a 10.69 percent rate, and the difference in interest rate allowed defendant to sell plaintiffs additional items, such as the gap protection and extended warranty, and keep the monthly payments lower than quoted in the read-back.

There was no reduction in the price of the car itself. It remained unchanged at $56,000. The evidence indicated the sales manager estimated the interest rate plaintiffs might qualify for based on the credit application, the credit reports, other information plaintiffs provided, and the sales manager's experience. The finance manager estimated the interest rate he might be able to obtain based on the credit information, his experience, and communication with the banks he worked with to find financing. There was no evidence that plaintiffs actually qualified for any particular interest rate. There was evidence plaintiffs were aware that the change in estimated interest rate was the reason for the change in the amount of the monthly payments. David testified his mother was skeptical when informed they could add extra items to the purchase and still have a lower monthly payment than reflected in the read-back, but he explained to her the change in the interest rate and its effect.

Again, the evidence was conflicting and the trial court found in favor of defendant. Plaintiffs have not demonstrated there was uncontroverted evidence supporting their position, compelling a finding in their favor as a matter of law.

Section 1770, subdivision (a)(16) proscribes "[r]epresenting that the subject of a transaction has been supplied in accordance with a previous representation when it has

10.

not." Plaintiffs simply refer back to the discussion of section 1770, subdivision (a)(9) and (13), to establish a violation of this subdivision. Section 1770, subdivision (a)(18) proscribes "[m]isrepresenting the authority of a salesperson, representative, or agent to negotiate the final terms of a transaction with a consumer." Plaintiffs refer to the discussion of section 1770, subdivision (a)(9) to establish a violation of this subdivision. The prior discussions of subdivision (a)(9) and (13) do not demonstrate that evidence presented at trial compels a finding in plaintiffs' favor on subdivision (a)(16) and (18). The evidence was conflicting and the trial court's findings favored defendant. Plaintiffs have not demonstrated reversible error.

## B.      Compliance with section 1782

Section 1782 provides that, as a prerequisite to filing an action for violation of the CLRA, the consumer must give notice of the alleged violations to the potential defendant. The statute requires that, "[t]hirty days or more prior to the commencement of an action for damages pursuant to" the CLRA, the consumer must notify the person alleged to have engaged in unfair or deceptive acts or practices of the particular alleged violations of section 1770 and "[d]emand that the person correct, repair, replace, or otherwise rectify the goods or services alleged to be in violation of Section 1770." (§ 1782, subd. (a).) Generally, "no action for damages may be maintained … if an appropriate correction, repair, replacement, or other remedy is given, or agreed to be given within a reasonable time, to the consumer within 30 days after receipt of the notice." (*Id.*, subd. (b).) The consumer may commence an action for injunctive relief without complying with section 1782, subdivision (a); the consumer may thereafter comply with section 1782, subdivision (a), and amend the complaint without leave of court to include a request for damages. (*Id.*, subd. (d).)

Defendant contended, and the trial court found, that plaintiffs did not comply with the notice requirements of section 1782. Plaintiffs sent a demand letter to defendant on September 21, 2009, identifying alleged violations of the CLRA and demanding that

defendant take certain actions to rectify the alleged violations. On October 1, 2009, just 10 days after sending the letter, plaintiffs filed their original complaint in this action. Plaintiffs assert they followed the procedure outlined in section 1782, subdivision (d), by initially filing a complaint only for injunctive relief and later filing a first amended complaint that added a claim for damages. The original complaint they filed, however, does not bear out this claim.

The second cause of action of the original complaint attempted to state a cause of action for violation of the CLRA. It alleged that, on September 21, 2009, plaintiffs caused a letter to be sent to defendant in compliance with section 1782. Defendant failed to correct, repair, replace, or otherwise remedy the violations of section 1770 (or agree to do so), within 30 days of receipt of plaintiffs' notice. The second cause of action then alleges: "As a proximate result of the violations of the CLRA by [defendant] …, Plaintiffs suffered harm, and continues to suffer harm, both economic and non-economic, in an amount according to proof at the time of trial .…" Plaintiffs further alleged they were entitled to punitive damages due to defendant's fraud, attorney fees and costs, and injunctive relief. The second cause of action also incorporated by reference all the allegations of the first cause of action for negligent misrepresentation, including its allegation of damages: "As a result of the misrepresentations and/or omissions of facts, Plaintiffs suffered harm, and continues to suffer harm, both economic and non-economic, in an amount according to proof at the time of trial." The second cause of action of the first amended complaint, which plaintiffs concede seeks damages for violations of the CLRA, contains the same allegation as the original complaint that "[a]s a proximate result of the violations of the CLRA …, Plaintiffs suffered harm, and continues to suffer harm, both economic and non-economic."

Plaintiffs contend the second cause of action of the original complaint sought only injunctive relief because the prayer on that cause of action did not include a request for

damages.  The allegations of the cause of action take precedence over the prayer in determining the remedies a plaintiff may recover, however.

> "'Every person who suffers detriment from the unlawful act or omission of another, may recover from the person in fault a compensation therefor in money, which is called damages.' [Citation.] *The subject matter of an action and the issues involved are determinable from the facts alleged rather than from the title of the pleading or the character of damage recovery suggested in connection with the prayer for relief.* [Citations.]  In defining the relief which may be awarded to plaintiff where an answer in the action has been filed, section 580 of the Code of Civil Procedure provides that 'the court may grant him any relief consistent with the case made by the complaint and embraced within the issues.'" (*Buxbom v. Smith* (1944) 23 Cal.2d 535, 542-543, italics added.)

Thus, because the second cause of action of the original complaint alleged plaintiffs suffered damages, both economic and non-economic, such damages could have been awarded even without an explicit request for them in the prayer.  We note also that the prayer on the second cause of action included a general request for "such other and further relief as the court deems appropriate under the circumstances," which may be construed to encompass a request for an award of damages.  Consequently, we conclude plaintiffs' original complaint did not seek only injunctive relief on the second cause of action.  Plaintiffs failed to comply with the requirements of section 1782; they failed to allow defendant a full 30 days within which to correct or agree to correct the alleged violations prior to the filing of an action for damages.  Consequently, the trial court did not err in denying plaintiffs damages on their cause of action for violation of the CLRA.

## IV.

### SECTION 1632

In its statement of decision, the trial court found in favor of defendant on plaintiffs' claim of violation of section 1632.  Section 1632 provides, in part:  "Any person engaged in a trade or business who negotiates primarily in Spanish …, orally or in writing, in the course of entering into [a conditional sale contract governed by the

provisions of the ASFA], shall deliver to the other party to the contract or agreement and prior to the execution thereof, a translation of the contract or agreement in the language in which the contract or agreement was negotiated, which includes a translation of every term and condition in that contract or agreement." (*Id.*, subd. (b).) Section 1632 contains an exception: "This section does not apply to any person engaged in a trade or business who negotiates primarily in a language other than English, as described by subdivision (b), if the party with whom he or she is negotiating is a buyer of goods or services …, and the party negotiates the terms of the contract, lease, or other obligation through his or her own interpreter. [¶] As used in this subdivision, 'his or her own interpreter' means a person, not a minor, able to speak fluently and read with full understanding both the English language and any of the languages specified in subdivision (b) in which the contract or agreement was negotiated, and who is not employed by, or whose service is made available through, the person engaged in the trade or business." (*Id.*, subd. (h).)

Plaintiffs contend defendant violated this provision by failing to furnish plaintiffs with a Spanish translation of their purchase contract, which they assert was primarily negotiated between plaintiffs and defendant in Spanish. They maintain the exception for a customer using his or her own interpreter does not apply, because the interpreter plaintiffs provided, their son David, was a minor.

The trial court found in favor of defendant on this issue, reasoning that David was the primary negotiator on behalf of plaintiffs, and he negotiated with the English-speaking representatives of defendant in English. Thus, section 1632 was not applicable because the transaction was not negotiated primarily in Spanish. We agree that the contract was not one negotiated primarily in Spanish and therefore was not governed by section 1632.

In construing a statute, "'we look first to the language of the statute, giving effect to its "plain meaning."'" [Citations.]" (*Burden v. Snowden* (1992) 2 Cal.4th 556, 562.)

14.

By its plain terms, the requirement that the customer be provided with a copy of a foreign language translation of the contract applies only when the "person engaged in a trade or business … negotiates primarily in Spanish." (§ 1632, subd. (b).) In this case, the person engaged in a trade or business was defendant. On plaintiffs' first visit to the dealership, they spoke with a Spanish-speaking salesman and their conversation was in Spanish. It is undisputed, however, that there was no negotiation of the sale of the vehicle on that occasion. Plaintiffs looked at the cars available; David expressed interest in a particular model, but it was not immediately available with the navigation system David wanted. The salesman told plaintiffs the car, equipped as David wanted, was rare, with only two available in the country; it would have to be ordered from out of state, which would take a couple of weeks. There was little or no discussion of price or other terms at that time.

When the car arrived at defendant's dealership, the Spanish-speaking salesman was unavailable. Plaintiffs negotiated the purchase of the vehicle with a salesman and a finance manager who did not speak Spanish. Defendant's representatives negotiated in English. Plaintiffs negotiated in English, through David.

Section 1632 contemplates a situation in which both parties are using the foreign language in negotiating the transaction. In that situation, the statute prevents the seller from suddenly springing on the buyer a contract written in English and expecting the buyer to sign it without reviewing its terms. The seller is required to provide a translation of the contract, in the language used to negotiate its terms, for the buyer to review prior to signing the English version.

We do not believe the exception in section 1632, subdivision (h), for a party who brings his or her own interpreter, applies when the seller negotiates in English and the buyer negotiates in English through the interpreter, as plaintiffs contend. The statute as a whole applies only when the "person engaged in a trade or business," in this case the seller, negotiates primarily in a language other than English. If the buyer brings an interpreter who negotiates with the seller in English, then the seller does not negotiate

15.

primarily in the foreign language. As we interpret the statute, the exception in section 1632, subdivision (h), applies when the parties negotiate in the foreign language, but the buyer is accompanied by an interpreter who can review the written contract in English and advise the buyer whether it accurately reflects the terms agreed to during negotiations in the foreign language. In that situation, the statute does not require the "person engaged in a trade or business" to provide the customer with whom it negotiates with a copy of the contract translated into the foreign language.

Defendant did not primarily negotiate the sale of the vehicle to plaintiffs in Spanish. During negotiations, the parties primarily communicated using English. Accordingly, section 1632, subdivision (b), did not require defendant to provide plaintiffs with a Spanish translation of the contract. The trial court correctly concluded plaintiffs failed to meet their burden of establishing a statutory violation by defendant.

## V.*

### ATTORNEY FEES

The only argument plaintiffs make for reversal of the order awarding defendant its attorney fees is that the judgment in defendant's favor should be reversed, so the fee order should also be vacated. Because plaintiffs have not established grounds for reversal of the judgment, they have not demonstrated any error in the attorney fees award.

---

\*       See footnote, *ante*, page 1.

16.

## **DISPOSITION**

The judgment is affirmed.  Defendant is entitled to its costs on appeal.

_____

DETJEN, J.

WE CONCUR:

_____

KANE, Acting P.J.

_____

PEÑA, J.

17.