Filed 5/10/22  In re M.S. CA1/5

## NOT TO BE PUBLISHED IN OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION FIVE

| | |
|---|---|
| In re M.S., et al., Persons Coming Under the Juvenile Court Law. | |
| ALAMEDA COUNTY SOCIAL SERVICES AGENCY,<br><br>    Plaintiff and Respondent,<br><br>v.<br><br>ERNEST T.,<br><br>    Defendant and Appellant. | A163090<br><br>(Alameda County Super. Ct. Nos. JD-033369-01, JD-033370-01, JD-033371-01) |

Ernest T. (Appellant), guardian to minors M.S. (born in 2005), E.S. (born in 2007), and J.S. (born in 2008) (Minors), challenges the juvenile court's jurisdictional finding that Minors are persons described by Welfare and Institutions Code section 300.[1]  Appellant also contends the court erred in removing Minors from his home.  We affirm.

_____

[1] All undesignated statutory references are to the Welfare and Institutions Code.

1

## BACKGROUND

Detention

Appellant is the Minors' mother's nephew. Minors started living with Appellant in 2017 or 2018, following the illness and then death of their mother; Appellant became Minors' legal guardian in December 2019. Minors' father was deported and resides in India.

According to a March 2021 detention report filed by the Alameda County Social Services Agency (Agency), the Agency received reports that Appellant shaved the heads and eyebrows of E.S. and J.S., forced E.S to box with him, and "whooped" Minors with a leather belt. E.S. had run away from home on three occasions due to the abuse.

Appellant told the Agency that E.S. and J.S. had been caught stealing $400 worth of merchandise from a mall, and that E.S. had stolen his cousin's car and gone joyriding. He said he told E.S. to shave his head and eyebrows because E.S. was "cutting lines in his eyebrows," which Appellant thought was a sign "of possible gang affiliation." Appellant said he disciplined Minors by making them do exercises, by disallowing television, or by "whooping with a belt." However, he denied "stripping [E.S.] down and whooping him in the shower."

E.S. told a child welfare worker that he ran away because Appellant made him shave his head and eyebrows. Appellant also subsequently posted a photograph of him to social media with the caption "No eyebrows . . . cause hoes do hoe shit. Might as well look the part, lol." The circulation of the photo on social media caused E.S. embarrassment. The shaving was punishment for stealing; E.S. said he "stole items because he knew that it would get him out of his house, and get the attention of others." Appellant

2

also shaved a line in E.S.'s afro a year earlier "and then made him go to school with the intention of [E.S.] being bullied for the haircut."

E.S. also told the Agency that Appellant made him box as additional punishment for stealing. Although E.S. wore boxing gear, Appellant hit E.S. "in the head, and the ribs" and made E.S. continue to fight after he fell. The fight caused a scab to reopen, which bled and hurt.

E.S. told the Agency that "if he was in trouble, he would have to 'totally undress' and either lay face down or stand in the shower facing the wall with the water on." Appellant would then "whoop him with a belt," which Appellant had named "Mr. Leatherhead." This left "purple welts" on E.S.'s body that "last[ed] 3-4 days and sometimes a week." He was last "whooped" a few weeks earlier.

J.S. told the Agency that the shaving of his head and eyebrows was punishment for stealing. Appellant would give him "a whooping on his butt" "with a belt or [Appellant's] hand" for "serious situations, such as lying." M.S. also told the Agency that Appellant used spankings with a belt as punishment; his last spanking occurred during 2020.

In March 2021, the Agency filed a section 300 petition, alleging that Minors are persons described by sections 300, subdivisions (b)(1) (failure to protect) and (j) (sibling abuse).[2] The petition was based on allegations that Appellant forced E.S. and J.S. to shave their head and eyebrows, forced E.S. to fight, and hit E.S. with a leather belt, causing welts. The petition alleged J.S. and M.S. were at significant risk of experiencing physical and emotional abuse due to the abuse of E.S.

---

[2] The Agency also alleged jurisdiction under section 300, subdivision (g), which was not a basis to remove Minors from Appellant's home because it was based on Minors' father's inability to care for them.

The juvenile court found a prima facie case had been made that Minors were persons described by section 300 and ordered them detained.

In April 2021, the Agency amended the petition to add allegations of serious emotional harm under section 300, subdivision (c).

Jurisdiction/Disposition

The Agency's April 2021 jurisdiction/disposition report recommended that the amended section 300 petition be found true and that Appellant receive family reunification services. The report described an April 2021 case planning meeting during which Appellant stated, " 'No discipline was ever excessive.' " He denied recently hitting Minors with a belt and said the last time had been within the last three years. Appellant "only agreed to temporarily commit to not using physical discipline" with Minors. Appellant also told the child welfare worker that "there may come a time where he feels non-physical discipline isn't working and will revert to his use of physical discipline."

When asked whether "he felt the use of corporal punishment with a leather belt was working," Appellant responded that his form of parenting " 'works amazing.' " After being informed the case plan would last at least six months, Appellant asked if "[a]fter 6 months, I don't think that's working, can we put spanking back on the case plan." He reportedly "chuckled" when he was told spanking "would never be put on a case plan as an acceptable form of discipline." The child welfare worker believed Appellant "had limited insight about how his discipline methods may be impacting the children physically and emotionally" and noted that Appellant "expressed ambivalence and opposition towards the idea of using alternate methods to discipline." Appellant also said he would "not be participating in any case plan activities until he is found 'guilty' of the information being presented before the court."

4

The Agency's report opined that the services offered to Appellant did not eliminate the need for removal because Minors "remain at risk of further emotional and physical abuse as the legal guardian does [not] understand the impact of his discipline practices."

The jurisdiction/disposition report and a May 2021 addendum report also described additional interviews with Minors. M.S. reported he was " 'bullied' " by Appellant, who would make fun of him for stuttering. M.S. reported that Appellant "would make fun of him every day at least a couple of times a day." He was last hit by Appellant with a belt approximately six months before. In reference to Appellant hitting Minors with a belt in the shower, M.S. reported that Appellant said "something about 'when water is on the body it hurts more.' " M.S. also stated that Appellant would hit the Minors on their palms with a leather belt; this happened to him once every two months and to his brothers approximately three times a month. E.S. also described this form of punishment and told the Agency it would result in red welts that would last approximately two days. E.S. said that, when he was forced to fight Appellant, Appellant hit him "with full strength." J.S. reported that Appellant last hit him with a belt one month earlier. Sometimes Appellant would hit E.S. and J.S. with two belts, trying to act like a character from a fighting video game. The leather belt would result in marks and bruises on J.S.'s body, and the boxing matches left marks on E.S.'s face.

In a June 2021 addendum report, the Agency reported that E.S. had been involved in a high-speed chase with law enforcement after stealing a car. J.S. and the Minors' caregiver's grandson were in the car when the chase occurred.

In June 2021, the juvenile court found Minors were persons described by section 300, subdivisions (b)(1), (g), and (j). The court found Appellant was "clearly disciplining the children . . . excessively." The court expressly credited Minors' consistent statements that Appellant's discipline left marks. The court observed that Appellant seemed to lack the "ability to . . . look inward and to determine that maybe the discipline that he's doling out is not appropriate for these children." The court was troubled by Appellant's expressions of intent to potentially resume corporal punishment of Minors. The court reiterated that, "[i]t was clear that this level of excessive discipline occurred in the home . . . that's beyond clear and convincing evidence actually." The court did not find the section 300, subdivision (c) allegation true.

The juvenile court declared Minors dependents of the juvenile court and found by clear and convincing evidence that Minors must be removed from Appellant's custody because return would cause a substantial danger to Minors and there were no reasonable alternative means to protect them. The present appeal followed.

DISCUSSION

I.    *Jurisdiction*

Appellant challenges the sufficiency of the evidence to support the juvenile court's jurisdictional findings under section 300, subdivisions (b) (failure to protect) and (j) (sibling abuse).[3] "In considering a claim of

---

[3] Under Section 300, subdivision (b), a minor comes within the jurisdiction of the juvenile court if "The child has suffered, or there is a substantial risk that the child will suffer, serious physical harm or illness, as a result of the failure or inability of the child's parent or guardian to adequately supervise or protect the child, or the willful or negligent failure of the child's parent or guardian to adequately supervise or protect the child from the conduct of the custodian with whom the child has been left . . . ."

6

insufficient evidence to support a jurisdictional finding, we review the evidence most favorably to the court's order—drawing every reasonable inference and resolving all conflicts in favor of the prevailing party—to determine if it is supported by substantial evidence." (*In re N.M.* (2011) 197 Cal.App.4th 159, 168.)

Citing *In re D.M.* (2015) 242 Cal.App.4th 634, Appellant argues the section 300, subdivision (b) allegation could not be found true "because [A]ppellant employed lawful physical discipline with no record of a mark and that the discipline was for appropriate purposes given the [M]inors' delinquent behavior." *In re D.M.* explains that, "Whether a parent's use of discipline on a particular occasion falls within (or instead exceeds) the scope of this parental right to discipline turns on three considerations: (1) whether the parent's conduct is genuinely disciplinary; (2) whether the punishment is 'necess[ary]' (that is, whether the discipline was 'warranted by the circumstances'); and (3) 'whether the amount of punishment was reasonable or excessive.'" (*Id.* at p. 641.)

Appellant's contention fails. At the outset, Appellant's assertion there was no evidence Appellant's punishments left marks is incorrect, because the trial court expressly credited Minors' statements that Appellant's "whoopings" with a belt left marks that lasted for days. Although "the infliction of visible bruises" does not "automatically require[] a finding that the limits of reasonable discipline were exceeded," "the presence of lasting bruises or other marks may support a finding that a parent crossed the line between permissible discipline and reportable abuse." (*Gonzalez v. Santa*

---

Under Section 300, subdivision (j), a minor comes within the jurisdiction of the juvenile court if "The child's sibling has been abused or neglected, as defined in subdivision (a), (b), (d), (e), or (i), and there is a substantial risk that the child will be abused or neglected, as defined in those subdivisions."

*Clara Cty. Dep't of Soc. Servs.* (2014) 223 Cal.App.4th 72, 92.)  In particular, a finding of abuse is justified where "there are grounds to find that the parent intended to inflict bruises, knew his or her conduct would do so, or should have known that bruises were likely to result from the amount of force applied and the method of its application." (*Id.* at p. 93.)  Given the Minors' statements that Appellant's beatings *regularly* left marks that lasted days, the evidence strongly supports the juvenile court's finding Appellant's means were unwarranted and excessive, even assuming those beatings were genuinely disciplinary.[4]

Neither has Appellant shown the juvenile court erred in finding that forcing E.S. to box Appellant—including the delivery of full-force punches to E.S.'s face and ribs—was unwarranted and excessive.  Finally, Appellant has not shown the court erred in finding that shaving E.S.'s and J.S.'s hair and eyebrows and posting photos on social media was unwarranted and excessive, given the degree of humiliation it caused.

Although E.S. engaged in serious misconduct that merited serious disciplinary measures, the trial court could reasonably conclude Appellant's methods were excessive and reflected intentional cruelty.  (See *In re D.D.* (2019) 32 Cal.App.5th 985, 994 [corporal punishment improper where "[t]he court could reasonably infer that mother intended to cruelly inflict inappropriate physical pain on" the minor].)  Appellant has not shown the

---

[4] Appellant argues for the first time in his reply brief that the allegations in the petition regarding the beatings with a belt are "devoid of any specifics such as time and place" and make reference to welts but not "bruises."  We need not address arguments made for the first time in a reply brief.  (*Nordstrom Com. Cases* (2010) 186 Cal.App.4th 576, 583.)  In any event, Appellant cites no authority that the Agency must allege in the petition every specific detail relevant to a jurisdictional allegation, and amend the petition each time additional information is adduced.

juvenile court erred in finding Minors were within the jurisdiction of the court under section 300, subdivisions (b) and (j).[5]

II.     *Removal*

Appellant also contends the juvenile court erred in removing Minors from his custody.  As relevant in the present case, "[b]efore the court may order a child physically removed from [a] parent's custody, it must find, by clear and convincing evidence, the child would be at substantial risk of harm if returned home and there are no reasonable means by which the child can be protected without removal."  (*In re T.V.* (2013) 217 Cal.App.4th 126, 135–136; see also § 361, subd. (c)(1).)  "A finding of parental abuse cannot alone provide the clear and convincing evidence necessary to justify removing a child.  [Citations.]  Rather, the juvenile court must determine whether a child will be in substantial danger if permitted to remain in the parent's physical custody, considering not only the parent's past conduct, but also current circumstances, and the parent's response to the conditions that gave rise to juvenile court intervention."  (*In re I.R.* (2021) 61 Cal.App.5th 510, 520.)  "[W]hen reviewing a finding that a fact has been proved by clear and convincing evidence, the question before the appellate court is whether the record as a whole contains substantial evidence from which a reasonable fact finder could have found it highly probable that the fact was true."  (*Conservatorship of O.B.* (2020) 9 Cal.5th 989, 995–996.)

On the merits, we conclude substantial evidence supports the juvenile court's findings by clear and convincing evidence that Minors would have been at substantial risk of harm if returned to Appellant's custody and that

---

[5] Appellant makes no argument specifically directed to section 300, subdivision (j), but it is clear M.S. and J.S. were also at risk of abuse because Appellant also subjected them to severe corporal punishment.

there were no reasonable means by which Minors could be protected without removal. The evidence demonstrated that Minors were regularly subjected to excessive discipline. Furthermore, and particularly relevant to the removal determination, the record showed Appellant was dishonest about the frequency of corporal punishment, lacked insight, refused to engage in therapy, and refused to forgo physical discipline in the future.[6] Those circumstances persuasively demonstrated substantial risk of harm to Minors at the time of the jurisdiction/disposition hearing.

The totality of the circumstances also supported the juvenile court's finding there were no reasonable means to protect Minors short of removal. Given the regularity of the imposition of excessive discipline, Appellant's dishonesty, lack of insight, and refusal to disavow corporal punishment or engage in services, the juvenile court "could reasonably infer ... that a combination of services and monitoring that might, under different circumstances, provide a viable alternative to removal, would not sufficiently protect [Minors] in this case." (*In re Nathan E.* (2021) 61 Cal.App.5th 114, 124.) In particular, given Appellant's refusal to acknowledge and address his abusive disciplinary practices, he has failed to establish any error by the court in finding unannounced visits insufficient to protect Minors.

---

[6] Appellant suggests he only *asked* about the possibility of putting "spanking" back on the case plan after six months. However, Appellant ignores that he *separately* told the Agency (as paraphrased in the jurisdiction/disposition report) that he only "agreed to temporarily commit to not using physical discipline" and "there may come a time where he feels non-physical discipline isn't working and will revert to his use of physical discipline." Furthermore, the juvenile court could reasonably view Appellant's question about adding spanking to the case plan, and Appellant's "chuckl[ing]" when told no, as reflecting Appellant's complete lack of insight into the inappropriateness of his corporal punishment.

10

Appellant relies on *In re Hailey T.* (2012) 212 Cal.App.4th 139, in which the appellate court affirmed the jurisdictional findings but reversed the removal order as to one of the parents' children. In that case, the court took jurisdiction after a doctor concluded a four-month-old had an eye injury inflicted by nonaccidental means. (*Id.* at pp. 142, 144.) After the agency detained the children, the parents started attending weekly parenting courses, individual counseling, and a 52-week child abuse class. (*Id.* at p. 144.) The appellate court reversed the removal order as to the uninjured sibling. Among other things, the court emphasized there was no evidence the sibling had ever been abused, the parents "started services at the earliest opportunity [and] showed progress in the services," and "[e]ven Agency participants in a team decision meeting early on in the case recognized [the mother and the father] were good parents." (*Id.* at pp. 147–148.)

Given Appellant's dishonesty, lack of insight, and refusal to participate in services, *In re Hailey T.* is easily distinguishable. (See *In re E.E.* (2020) 49 Cal.App.5th 195, 216–217 [distinguishing *In re Hailey T.* on similar grounds]; *In re V.L.* (2020) 54 Cal.App.5th 147, 158 [affirming removal in part because the father "denied a history of domestic violence" and had not attended counseling]; cf. *In re Ashly F.* (2014) 225 Cal.App.4th 803, 805–807, 810 [juvenile court erred in removing the minors where the mother expressed remorse, was enrolled in a parenting class, and the father promised to monitor the mother's behavior]; *In re A.E.* (2014) 228 Cal.App.4th 820, 826–827 [juvenile court erred in removing the minor where the father "expressed remorse and [was] committed to learning better discipline methods" and the mother "affirmed she would not have allowed [the father] to strike [the minor] with a belt"].)

11

" 'The trial court is in the best position to determine the degree to which a child is at risk based on an assessment of all the relevant factors in each case.' " (*In re E.E.*, *supra*, 49 Cal.App.5th at p. 217.) Appellant has not shown the juvenile court erred in removing Minors from his custody.

## DISPOSITION

The juvenile court's orders are affirmed.

_____

SIMONS, Acting P. J.

We concur.

_____

NEEDHAM, J.

_____

BURNS, J.

(A163090)